STATE of Wisconsin, Plaintiff-Appellant,

v.

David C. POLASHEK, Defendant-Respondent.†

Court of Appeals

*No. 00–1570–CR. Submitted on briefs February 20, 2001.—Decided May 30, 2001.*

## 2001 WI App 130

(Also reported in 630 N.W.2d 545.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Sandra L. Nowack*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Nila Jean Robinson* of *Robinson, Peterson, Berk & Cross, S.C.* of Appleton.

A nonparty brief was filed by *Bruce Meredith* and *Rebecca L. Ferber* of Madison, for Wisconsin Education Association Council.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J. The State of Wisconsin brings this interlocutory appeal from an order approving a jury instruction that will be used in the criminal prosecution of David Polashek.[1] This court granted leave to appeal to determine the proper jury instruction for alleged violations of WIS. STAT. § 48.981(7), relating to disclosures of confidential child abuse reporting information. We conclude that the jury instruction as currently drafted incorrectly states the law and, accordingly, reverse the order and remand for further proceedings consistent with this opinion.

¶ 2. The State alleges that Polashek, superintendent of schools for Oconto Falls Area Schools, unlawfully disclosed to a student's parents the names of two school employees. The employees had reported to county social services that they suspected the student had been abused.[2] Polashek wrote the parents a

---

[1] On July 11, 2000, on its own motion, this court concluded that a three-judge panel should decide the petition for leave to appeal (the issues raised by the petition merited a three-judge panel) and further, that the interlocutory appeal should also be decided by a three-judge panel. In a separate order, we granted the petition for leave on July 11. The entry of that order had the same effect as the filing of a notice of appeal. *See* WIS. STAT. RULE 809.50(3). All statutory references herein refer to the 1999–2000 version unless otherwise noted.

[2] Although the specific circumstances of the abuse report are not relevant to this appeal, we note that social services ultimately concluded that there was no evidence the child had been abused. The parents contacted Polashek because they

letter in which he named the employees who made the report. The State charged Polashek, pursuant to WIS. STAT. § 48.981(7)(f), with violating § 48.981(7)(e) and (f).[3]

¶ 3. The State argues that the proposed jury instruction misstates the law because (1) it requires the State to prove that the parents to whom Polashek wrote the letter did not previously know the employees' identities; and (2) it requires the State to prove intent, which it need not do because WIS. STAT. § 48.981(7) is a strict liability statute. We agree with both of these arguments.

## BACKGROUND

¶ 4. There is no standard jury instruction for violations of WIS. STAT. § 48.981(7). Accordingly, both parties submitted a proposed jury instruction to the circuit court. The court adopted Polashek's instruction, with minor changes. The instruction states that to convict Polashek of the unauthorized disclosure of the identity of a child abuse reporter, the State must prove four elements: (1) Polashek communicated the identity of a person who is defined as a child abuse reporter; (2)

---

were upset that the report had been made. Polashek wrote a letter to the parents in which he discussed the results of his inquiry into the circumstances that led to the employees' call to social services.

[3] WISCONSIN STAT. § 49.981(7) provides in relevant part:

(e) A person to whom a report or record is disclosed under this subsection may not further disclose it, except to the persons and for the purposes specified in this section.

(f) Any person who violates this subsection, or who permits or encourages the unauthorized dissemination or use of information contained in reports and records made under this section, may be fined not more than $1,000 or imprisoned not more than 6 months or both.

632

Polashek's communication was not authorized by law; (3) the communication was a disclosure to the parents; and (4) Polashek acted intentionally.

¶ 5. With respect to the third and fourth elements, the instruction provides:

> The third element requires that David Polashek communicated the identity of the reporter to [the parents] so as to disclose that identity. Before you may find that Mr. Polashek disclosed the identity of a reporter, you must find that he exposed to view, or revealed, information of identity which was previously secret or unknown to [the parents]. It is not sufficient that the information was merely repeated; you should not find David Polashek guilty unless you find that he laid bare information which was previously unknown or secret to [the parents].
>
> The fourth element requires that David Polashek acted intentionally. "Intentionally," as used here means that David Polashek knew that he had a duty to refrain from unauthorized disclosure of the reporting person's identity, and knew or believed that he was disclosing protected information when he communicated the reporter's name to another. You may not look into a person's mind in order to determine intent, but you may find intent, if you find it at all, from this conduct, and from an examination of the facts and circumstances surrounding the conduct.

The State objected to the third element, arguing that WIS. STAT. § 48.981(7)(f) does not require it to prove that the information disclosed was previously unknown to the recipient. When the circuit court rejected the State's argument, the State filed a petition

for leave to appeal a nonfinal order.[4] We granted the petition and this appeal followed.

¶ 6. The State did not object to the intent element at the circuit court, but raises an objection for the first time on appeal, arguing that the legislature intended WIS. STAT. § 48.981(7) to impose strict liability on any person who discloses the identity of a reporter without authorization.

## DISCUSSION

■

¶ 7. Resolution of this appeal requires interpretation of WIS. STAT. § 48.981(7), a question of law subject to our de novo review. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315 (Ct. App. 1997). The goal of statutory interpretation is to ascertain the legislature's intent, and to discern this intent we look first to the statute's plain language. *Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563 (1997). If the language is clear, we look no further and simply apply the statute to the facts and circumstances before us. *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). If the statute's language is ambiguous, however, we will consult its legislative history, scope, context and purpose in

[4] Polashek objected to the State's petition for leave to appeal, arguing that the State's petition was untimely and that the State's objection is improper because the State originally proposed a jury instruction that was substantially similar to Polashek's proposed instruction. After considering Polashek's argument, we concluded by order dated July 11, 2000, that the petition stated sufficient grounds to warrant an interlocutory appeal. Polashek renews his objection on appeal. Because we have already rejected this argument, we do not consider it further.

order to apply the statute consistent with the legislature's intent. *See id.* We begin with a discussion of § 48.981.

## A. WISCONSIN STAT. § **48.981**

¶ 8. Part of the children's code, WIS. STAT. § 48.981 includes provisions mandating the reporting of suspected child abuse. Pursuant to § 48.981(2), numerous professionals, such as physicians, nurses, social workers, school teachers, school administrators and others, are required to report suspected child abuse. The statute provides criminal penalties for reporters who intentionally fail to report as required by law. *See* WIS. STAT. § 48.981(6).

¶ 9. The statute also contains a provision that protects the confidentiality of records and reporters. *See* WIS. STAT. § 48.981(7). However, the section authorizes disclosure of reports in specified cases. Section 48.981(7) provides in relevant part:

> CONFIDENTIALITY. (a) All reports made under this section, notices provided under sub. (3) (bm) and records maintained by an agency and other persons, officials and institutions shall be confidential. Reports and records may be disclosed only to the following persons:
>
> 1. The subject of a report, except that the person or agency maintaining the record or report may not disclose any information that would identify the reporter.
>
> . . . .
>
> 3m. A child's parent, guardian or legal custodian or the expectant mother of an unborn child, except that the person or agency maintaining the

record or report may not disclose any information that would identify the reporter.[5]

A person who violates § 48.981(7), or who permits or encourages the unauthorized dissemination or use of the information contained in reports and records made under the section, may be fined or imprisoned, or both. *See* WIS. STAT. § 48.981(7)(f).

## B. Disclosure defined

¶ 10. Pursuant to WIS. STAT. § 48.981(7)(a)3m, even if Polashek was authorized to provide the parents with some information about the report, he could not "disclose" any information that would identify the reporter. At issue is whether it is possible to "disclose" information to someone who already knows it.

¶ 11. Both parties acknowledge that the word "disclose" is not defined in the statute, and that Wisconsin courts have not previously interpreted the word as it is used in WIS. STAT. § 48.981. Additionally, both parties contend that the statute is unambiguous, and that this court can rely on dictionary definitions to define "disclose" without necessarily concluding that the statute is ambiguous. *See Seider v. Musser*, 222 Wis. 2d 80, 87 n.4, 585 N.W.2d 885 (Ct. App. 1998), *aff'd*, 2000 WI 76, 236 Wis. 2d 211, 612 N.W.2d 659 (Dictionaries may properly be consulted for the ordinary meaning of words, and consultation does not by itself indicate that a statute is ambiguous.).

---

[5] It is not clear whether the State alleges that Polashek's letter to the parents was a disclosure to the subject of a report or to the child's parent. In any event, the phrase at issue, "may not disclose any information that would identify the reporter," is the same in both WIS. STAT. § 48.981(7)(a)1 and 3m.

¶ 12. Both parties have provided this court with the definition of "disclose" found in BLACK'S LAW DI CTIONARY 464 (6th ed. 1990): "To bring into view by uncovering; to expose; to make known; to lay bare; to reveal to knowledge; to free from secrecy or ignorance, or make known." Based on their mutual reference to this definition, the parties appear to agree that the word "disclose" means to expose, make known or reveal. The heart of their disagreement is whether the recipient's previous knowledge of the information affects whether a disclosure has been made.

¶ 13. The State argues that "disclose" refers to the confidential character of the information conveyed, and not to the recipient's mental state. Conversely, Polashek argues that one cannot "disclose" information if the recipient of the information is already familiar with it. Polashek's thorough research of cases outside Wisconsin has identified persuasive authority that supports his position.

¶ 14. The Federal Privacy Act, 5 U.S.C. § 552a (2000), provides in relevant part: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." The statute also provides some exceptions to the rule. Like WIS. STAT. § 48.981, the federal statute does not define the term "disclose." This lack of definition has led to similar litigation on the federal level.

¶ 15. Several federal courts considering the issue have held that the Act is not violated where the agency makes available information that is already known by the recipient. *See Quinn v. Stone*, 978 F.2d 126, 134 (3d Cir. 1992); *Pellerin v. Veterans Admin.*, 790 F.2d 1553,

1556 (11th Cir. 1986) ("A dissemination of information to a person or persons who were previously aware of the information is not a disclosure under the Privacy Act."); *King v. Califano*, 471 F. Supp. 180, 181 (D.D.C. 1979) ("[A]lthough the Privacy Act does not define disclosure, the term denotes the imparting of information which in itself has meaning and which was previously unknown to the person to whom it is imparted.").

¶ 16. At least one federal court, however, examined the issue in detail and concluded that an agency's unauthorized release of a protected record does constitute a disclosure under the Privacy Act except in those rare instances where the record merely reflects information that the agency has previously, and lawfully, disseminated outside the agency to the recipient, who is fully able to reconstruct its material contents. *See Pilon v. United States Dept. of Justice*, 73 F.3d 1111, 1124 (D.C. Cir. 1996).

¶ 17. The federal cases grappling with the definition of the word "disclose" are helpful in that they have convinced us that the word "disclose," as used in WIS. STAT. § 49.981(7), is ambiguous. Statutory language is ambiguous if reasonable people could disagree as to its meaning. *State ex rel. Frederick v. McCaughtry*, 173 Wis. 2d 222, 226, 496 N.W.2d 177 (Ct. App. 1992). As the federal cases illustrate, reasonable people can disagree about the definition of the word "disclose."

¶ 18. Having concluded that the statutory language is ambiguous, this court examines the scope, history, context, subject matter and purpose of the statute in order to determine the legislative intent. *See id.* Laws pertaining to the protection of children who are victimized by abuse and neglect are found primarily in WIS. STAT. ch. 48, the children's code. One of the ways in

which the Wisconsin legislature has historically protected children is through legislation encouraging citizens to report suspected abuse.

¶ 19. In 1965, WIS. STAT. § 48.981 required physicians, nurses, school social workers and school administrators to report child abuse they believed had occurred. At that time the statute granted immunity from criminal liability, but made no particular assurances of confidentiality for professionals who reported suspected abuse. *See* WIS. STAT. § 48.981(2) (1965).

¶ 20. Since then, the Wisconsin legislature has demonstrated its commitment to encourage reporting of suspected abuse in a number of ways. In 1977, the legislature articulated this objective in WIS. STAT. ch. 48's purpose statement:

> It is the purpose of this act to protect the health and welfare of children by encouraging the reporting of suspected child abuse and child neglect in a manner which assures that appropriate protective services will be provided to abused and neglected children and that appropriate services will be offered to families of abused and neglected children in order to protect such children from further harm and to promote the well-being of the child in his or her home setting, whenever possible.

Laws of 1977, ch. 355, § 1. Although the statement has since been amended, the children's code continues to bear out this objective.

¶ 21. All citizens are encouraged to report suspected abuse, and an ever-increasing number of professionals are required to do so. *See* WIS. STAT. § 48.981(2). Today, persons required to report must make a report not only after abuse has taken place, but also when there is reason to believe abuse has been

threatened and may occur in the future. *See id.* Additionally, WIS. STAT. § 48.981(8) expressly mandates training for professionals who are mandated reporters of child abuse, and the statute specifically requires the training to encourage reporting of suspected abuse.

¶ 22. In addition to expanding the responsibilities of persons required to report child abuse, the legislature has expanded protections for reporters as well. No person can be fired from a job as a consequence for making a good faith report of suspected child abuse. *See* WIS. STAT. § 48.981(2). People who report abuse, whether mandated to report or not, are assured immunity from civil and criminal liability for reports made in good faith, and good faith is now presumed. *See* WIS. STAT. § 48.981(4).

¶ 23. In light of this legislative history and statutory scope, we agree with the State's conclusion: The legislature intends that people who, in good faith, report suspected abuse shall not suffer negative consequences as a result of making reports. The confidentiality provisions of WIS. STAT. § 48.981(7) are consistent with this goal. The statute protects the reporters' identities, as well as the records themselves, authorizing release of information in limited situations. *See id.*

¶ 24. Given the statute's goal of protecting reporters' identities, it is appropriate to interpret the word "disclose" in a way that will support, rather than undercut, the statute's main thrust. We conclude that the State's interpretation of the word "disclose," which does not require that the disclosed information was a surprise or unknown to the recipient of the information, is most consistent with the purpose of WIS. STAT. § 48.981(7).

640

¶ 25. As the Wisconsin Education Association Council (WEAC) notes in its amicus curiae brief, forms of the word "disclose" appear several times in WIS. STAT. § 48.981(7). Most notably, § 48.981(7)(a) provides that "[r]eports and records may be disclosed only to the following persons . . . ." We will reject an interpretation of a word that ascribes different meanings to the same word as it variously appears in a statute unless the context clearly requires such an approach. *Wilson v. Waukesha County*, 157 Wis. 2d 790, 796, 460 N.W.2d 830 (Ct. App. 1990). Thus, we will seek to interpret the word "disclose" consistently as it is used throughout § 48.981(7).

¶ 26. If a report could only be disclosed to recipients not already familiar with the information in the report, then WIS. STAT. § 48.981(7)(a) would allow reports to be freely discussed with anyone who was already familiar with the information in the reports, including individuals not included in the list of authorized recipients enumerated in § 48.981(7)(a)1–17. WEAC argues that under Polashek's analysis,

> an official could discuss a child abuse report with a news reporter who received an anonymous tip or a neighbor who witnessed the abuse, without making a "disclosure" merely because they demonstrated knowledge of information contained in the report. The intent of the legislature cannot reasonably be interpreted to permit the release of confidential information under these circumstances.

We agree. To effectuate the statute and avoid absurd results, we conclude that when one discloses information under § 48.981(7), the recipient's previous

knowledge of the information does not alter the fact that a disclosure was made. Accordingly, we reverse the trial court's order approving a jury instruction inconsistent with this conclusion.

## C. WISCONSIN STAT. § 48.981(7) is a strict liability statute

¶ 27. The State argues for the first time on appeal that WIS. STAT. § 48.981(7) is a strict liability statute, and that the ordered jury instruction incorporating an intent requirement is in error. Polashek contends that the State waived this issue when it failed to raise it at the circuit court and, indeed, proposed jury instructions incorporating an intent requirement.

¶ 28. The oft-repeated rule of Wisconsin appellate practice is that issues not raised in the circuit court generally will not be considered for the first time on appeal. *See Apex Elec. Corp. v. Gee*, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998). This rule does not relate to the court's jurisdiction and is not absolute. When an issue involves a question of law rather than of fact, has been briefed by both parties and is of sufficient public interest to merit a decision, this court may exercise its discretion to address the issue. *Id.*

¶ 29.

This is such a case. The parties have briefed the issue whether WIS. STAT. § 48.981(7) is a strict liability statute, and the issue presents a question of law. Moreover, this statute has not been previously interpreted. We conclude that this issue is of sufficient public interest to merit a decision, and that our decision will assist the courts and others in applying the statute. *See Apex*, 217 Wis. 2d at 384. It is also compelling that our deci-

sion will be applicable to the case before us, as we are remanding for a jury trial and the court will have the opportunity to craft new jury instructions consistent with this opinion.

¶ 30. We now turn to whether WIS. STAT. § 48.981(7) is a strict liability statute. A crime imposes strict liability if the prohibited behavior is punishable based on a defendant's behavior, regardless of his or her intent. *See State v. Dundon*, 226 Wis. 2d 654, 664, 594 N.W.2d 780 (1999). In prosecuting strict liability offenses, the State is excused from proving the defendant had a criminally-culpable state of mind when he or she acted; a strict liability crime is punishable even where the defendant intended no harm. *See State v. Stoehr*, 134 Wis. 2d 66, 75, 82–83, 396 N.W.2d 177 (1986).

¶ 31. Rarely are strict liability crimes labeled as such within the statutes. WAYNE R. LAFAVE AND AUSTIN W. SCOTT, JR., CRIMINAL LAW § 31 at 219 (Hornbook Series 1978). Thus, the courts have frequently been asked to decide whether intent is an element of the crime when the statute does not explicitly refer to intent. *Stoehr*, 134 Wis. 2d at 75. The issue turns, as do other questions of statutory construction, on legislative intent. *Id.* This presents an issue of law, which we review de novo. *State v. Neumann*, 179 Wis. 2d 687, 706, 508 N.W.2d 54 (Ct. App. 1993).

¶ 32. The parties do not dispute that WIS. STAT. § 48.981(7) is silent with respect to intent. Even when a criminal statute contains no explicit words denoting intent, our supreme court has on occasion interpreted the statute to require the State to prove criminal

643

intent. *See Stoehr*, 134 Wis. 2d at 77. Where the statute is silent, we must examine legislative intent to determine whether the statute imposes strict liability. *See id.* In determining this legislative intent, our supreme court has considered the following factors: the language of the statute, the legislative history of the statute, the seriousness of the penalty, the purpose of the statute and the practical requirements of effective law enforcement. *See id.* at 76. On the basis of these factors, we conclude that § 48.981(7) is a strict liability statute.

¶ 33. We first look to the statute's language. WIS CONSIN STAT. § 48.981(7) contains no explicit intent requirement. For example, it states, "Reports and records may be disclosed only to" specified persons. WIS. STAT. § 48.981(7)(a). It further provides, "A person to whom a report or record is disclosed under this subsection may not further disclose it . . . ." WIS. STAT. § 48.981(7)(e). Finally, the penalty section, § 48.981(7)(f), states that "Any person who violates this subsection, or who permits or encourages the unauthorized dissemination or use of information . . . may be fined . . . or imprisoned . . . or both." Notably absent from each of these provisions is a word suggesting intent is an element of the crime.

¶ 34. Conversely, another section of WIS. STAT. § 48.981 contains an express intent requirement. Section § 48.981(6) provides: "Whoever *intentionally* violates this section by failure to report as required may be fined . . . ." (Emphasis added.) This suggests the legislature chose to impose an intent requirement for failures to report, but not for unlawful disclosures of confidential reports.

¶ 35. We also consider the statute's legislative history and purpose. Neither party has directed this

court to any legislative history specifically indicating whether the legislature intended WIS. STAT. § 48.981(7) to be a strict liability statute. However, the State argues, the general legislative history and purpose of § 48.981 support a conclusion that the legislature intended § 48.981(7) to be a strict liability statute. The State explains:

> [T]he Wisconsin Legislature has gone to great lengths to recognize the importance of protecting children from abuse. Part of that protection is found in the Legislature's efforts to encourage citizens to report suspected maltreatment.
> The Legislature's purpose in prohibiting identification of people who report suspected child abuse is, therefore, to accomplish a social good. As the court said in *Stoehr*: "When the Legislature's goal is primarily to regulate, to accomplish a social good, or to obtain a high standard of care, proof of a criminal state of mind is often eliminated to achieve the same result." *Stoehr*, 134 Wis. 2d at 79.

This argument is compelling. The legislative history, as well as the purpose of § 48.981(7), are consistent with both accomplishing a social good and imposing a high standard of care on agencies, officials and institutions who maintain confidential records. *See* WIS. STAT. § 48.981(7)(a). Thus, the legislative history and purpose factors suggest that the legislature intended to impose strict liability for violations of § 48.981(7).

¶ 36. Another factor we must consider is the seriousness of the penalty. The maximum penalty for a violation of WIS. STAT. § 48.981(7) is a fine of not more than $1,000, imprisonment of not more than six months, or both. *See* WIS. STAT. § 48.981(7)(f). The rationale for considering this factor is that if a penalty is particularly harsh, the legislature probably intended

to include an intent requirement. *See Stoehr*, 134 Wis. 2d at 81. Here, the penalty provides for the possibility of imprisonment, which may suggest that intent is an element of the crime, but the penalty does not resolve the issue. *See id.* Indeed, our supreme court has recognized that not even all crimes with prison sentences (sentences exceeding one year, *see* WIS. STAT. § 973.02) include intent as an element. *See id.* at 81–82.

¶ 37. Finally, we look at the practical requirements of effective law enforcement. The proposed jury instruction would require the State to prove that Polashek acted intentionally, "knew that he had a duty to refrain from unauthorized disclosure of the reporting person's identity, and knew or believed he was disclosing protected information when he communicated the reporter's name to another." The State would be required to examine Polashek's personal knowledge of the statutory requirements, as well as his knowledge of whether certain information was protected at the time he disclosed it. We conclude that this type of requirement would greatly hamper law enforcement efforts and thereby frustrate the purposes of WIS. STAT. § 48.981.

¶ 38. All of the factors we have discussed bear on the interpretation of WIS. STAT. § 48.981(7). No single factor is controlling. *See Stoehr*, 134 Wis. 2d at 82. Upon considering all the factors relating to legislative intent, we conclude that the factors point toward strict liability. Accordingly, we hold that the legislature intended § 48.981(7) to be a strict liability offense. We reverse the trial court order requiring a jury instruction that contains an intent requirement.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.