STATE of Wisconsin, Plaintiff-Appellant,†

v.

David C. POLASHEK, Defendant-Respondent-
Petitioner.

Supreme Court

*No. 00–1570–CR. Oral argument April 10, 2002.—Decided
June 26, 2002.*

**2002 WI 74**

(Also reported in 646 N.W.2d 330.)

† Motion for reconsideration denied 9/26/02.

For the defendant-respondent-petitioner there was a brief by *Nila Jean Robinson* and *Robinson, Peterson, Berk & Cross, S.C.,* Appleton, and oral argument by *Nila Jean Robinson.*

For the plaintiff-appellant the cause was argued by *Sandra L. Nowack,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

An amicus curiae brief was filed by *Thomas R. Schrimpf, Charles David Schmidt* and *Hinshaw & Culbertson,* Milwaukee, on behalf of the Wisconsin Association of School District Administrators.

An amicus curiae brief was filed by *Teresa M. Elguézabal* and *Rebecca L. Ferber* on behalf of the Wisconsin Education Association Council.

¶ 1. JON P. WILCOX, J. In this case we review a published decision of the court of appeals, *State v. Polashek,* 2001 WI App 130, 246 Wis. 2d 627, 630 N.W.2d 545. In that case, the court of appeals interpreted several requirements for a prosecution under Wis. Stat. § 48.981(7) (1999–2000),[1] the statute that provides a criminal penalty for the unauthorized disclosure of confidential information relating to reports of suspected child abuse or neglect. The court of appeals held that when the State charges a defendant with a violation of § 48.981(7), the State is not required to prove that the recipient of the confidential information[2] had no prior knowledge of the information, and the State is not required to prove the defendant's mental state because § 48.981(7) creates a strict liability offense. We disagree with the court of appeals on the first issue, but agree with the court of appeals on the second issue.

¶ 2. David C. Polashek was charged with a violation of § 48.981(7). Before trial, Polashek offered a jury instruction, which stated that to prove that the defendant "disclosed" the confidential information, the State must show that the recipient did not know the confidential information at the time the information was conveyed. The proposed jury instructions further provided that the State would be required to prove that the

---

[1] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[2] Hereafter, any person to whom confidential information is conveyed is referred to as a "recipient."

disclosure was intentional. The Oconto County Circuit Court, Larry L. Jeske, Judge, accepted Polashek's proposed instructions.

¶ 3. The State was granted leave for an interlocutory appeal, and the court of appeals reversed the circuit court's decision. We accepted Polashek's petition for review, and we now affirm the holding of the court of appeals in part, and reverse in part. First, we hold that the term "disclose" in § 48.981(7) requires that the recipient not have knowledge of the information communicated. However, we agree with the court of appeals that the statute creates a strict liability offense. We thus remand the case to the trial court for further proceedings consistent with this opinion.

## I[3]

¶ 4. In March 1999, Reporter[4] A noticed a mark on a student's forehead, and suspected it was the result of child abuse. Reporter A removed the student from the classroom and informed Reporter B, who was a required reporter of suspected child abuse under Wis. Stat. § 48.981(2). Reporter B then notified the Oconto County Department of Human Services about the suspected abuse. A social worker arrived, spoke with the student, and apparently determined that abuse was unlikely.

¶ 5. The student's parents, upset with the handling of the incident, met with the student's teacher and then with the school principal. Finally, the parents met

---

[3] We provide only a brief summary of the factual background in this case because many of the facts are still contested, and they are, for the most part, irrelevant to our decision.

[4] "Reporter," as used here, is a statutorily defined term that refers to a person who reports suspected child abuse or neglect under § 48.981. *See* Wis. Stat. § 48.981(1)(g).

with Polashek, who is the superintendent of the Oconto Falls Area School District. After the parents met with Polashek, Polashek met with Reporter A and Reporter B to discuss the incident. Following that meeting, Polashek wrote a letter to the student's parents, explaining the situation; copies of the letter were mailed to Reporter A and Reporter B. In the text of the letter, Polashek allegedly used the names of Reporter A and Reporter B.

¶ 6. A criminal complaint was filed against Polashek, alleging that, by including the names of the reporters in the letter, Polashek violated Wis. Stat. § 48.981(7)(e) and (f).[5] Polashek pleaded not guilty to the charge and requested a jury trial.

¶ 7. Because there are no model jury instructions for a charge of violating § 48.981(7), Polashek and the State each submitted proposed jury instructions on the elements of the crime. After a series of amendments,

---

[5] Wis. Stat. § 48.981(7) provides, in relevant part:

(a) All reports made under this section ... and records maintained by an agency and other persons, officials and institutions shall be confidential. Reports and records may be disclosed only to the following persons:

. . . .

3m. A child's parent, guardian or legal custodian ... except that the person or agency maintaining the record or report may not disclose any information that would identify the reporter.

. . . .

(e) A person to whom a report or record is disclosed under this subsection may not further disclose it, except to the persons and for the purposes specified in this section.

(f) Any person who violates this subsection, or who permits or encourages the unauthorized dissemination or use of information contained in reports and records made under this section, may be fined not more than $1,000 or imprisoned not more than 6 months or both.

the court accepted Polashek's proposed instructions. Those instructions, with respect to the third element of the crime, read:

> The third element requires that David Polashek communicated the identity of the reporter [to the parents] so as to disclose that identity. Before you may find that Mr. Polashek disclosed the identity of a reporter, you must find that he exposed to view, or revealed, information of identity which was previously secret or unknown [to the parents]. It is not sufficient that the information was merely repeated; you should not find David Polashek guilty unless you find that he laid bare information which was previously unknown or secret [to the parents].

The State objected to the instruction on this element, arguing that it should not be required to prove that the identity of the reporter was unknown to the recipient before Polashek's disclosure. The State sought permission to appeal the order, and the court of appeals granted the request.

¶ 8. In a published decision, *State v. Polashek,* 2001 WI App 130, the court of appeals reversed the circuit court's order. The court of appeals concluded that the term "disclose" was ambiguous, but looked to the legislative history and the purpose of the statute to determine that the recipient's prior knowledge did not alter the fact that a disclosure was made. The court of appeals thus held that the term "disclose" does not require that the State prove that the confidential information was unknown to the recipient of the information, and further held that the defendant's proposed jury instruction was inappropriate.

¶ 9. Although the State did not object to the proposed instruction in the trial court, it also challenged the fourth element of Polashek's proposed jury

instructions on appeal. That instruction would have required that the State prove that the defendant intentionally disclosed the confidential information. The court of appeals chose to address this question pursuant to *Apex Electronics Corp. v. Gee,* 217 Wis. 2d 378, 577 N.W.2d 23 (1998), and held that § 48.981 is a strict liability statute.

¶ 10. Polashek petitioned this court for review on both issues, and we accepted. On review, we disagree with the court of appeals' interpretation of "disclose." Rather, we hold that information cannot be "disclosed" to a recipient who already knows the information communicated. However, we agree with the court of appeals that § 48.981(7) creates a strict liability offense. We therefore affirm the holding of the court of appeals in part, reverse the holding in part, and remand the case to the circuit court for further proceedings consistent with this opinion.

## II

¶ 11. We begin by briefly addressing the question of timeliness. Polashek claims that the State's appeal in this case was untimely because it was not made within the prescribed statutory time limits and that the State therefore waived its right to appeal the non-final order. We disagree.

¶ 12. After the initial submission of the proposed jury instructions, and several amendments to the instructions, the circuit court sent a letter to each of the parties. The letter, which was filed on March 9, 2000, stated that the court was "not satisfied with either [jury] instruction," but felt that Polashek's proposed instruction was "closer to the mark." The letter went on

to state that if either party wished to provide further jury instructions, the court would consider them, but that the court was convinced that "the information transmitted must have been previously unknown to the recipient." The letter was signed by Judge Jeske.

¶ 13. On June 2, 2000, the State filed a motion with the circuit court, asking for an immediate ruling on which substantive jury instruction the court intended to use. The court issued an order on June 6, 2000, stating that it intended to use the instructions attached to the order. These attachments included Polashek's proposed instructions—the ones currently under dispute. The order was dated nunc pro tunc, March 9, 2000. The State appealed this order.

¶ 14. Polashek contends that the original letter constituted the order from which the State should have appealed. Citing *Fredrick v. City of Janesville,* 92 Wis. 2d 685, 285 N.W.2d 655 (1979), and *Orth v. Ameritrade, Inc.,* 187 Wis. 2d 162, 522 N.W.2d 30 (Ct. App. 1994), Polashek argues that the letter did not contemplate further action by the court, and therefore constituted an order for the purposes of Wis. Stat. § 808.03(2).

¶ 15. We disagree with Polashek for two reasons. First, the letter was simply not an order from a circuit court. As Polashek himself notes, in *Fredrick* we held that the test of "finality" is "not what later happened in the case but rather, whether the trial court contemplated the document to be a final judgment or order at the time it was entered." *Fredrick,* 92 Wis. 2d at 688. Here, the plain text of the circuit court's letter anticipated that there could be further amendments to the jury instructions, undercutting the conclusion that the letter constituted a final order. And even though the June 6th order was labeled "nunc pro tunc," that

authority could not create a retroactive order where none previously existed. We agree with the decision in *State v. Jeffrie C.B.*, 218 Wis. 2d 145, 150, 579 N.W.2d 69 (Ct. App. 1998), where the court of appeals stated, " 'A court cannot modify or amend its judgment to make it conform to what the court ought to have or intended to adjudge.' Even a court's nunc pro tunc authority is limited to rectifying what might be termed 'mechanical errors' in our judicial system." (quoting *Strawser v. Strawser*, 126 Wis. 2d 485, 490, 377 N.W.2d 196 (Ct. App. 1985)).

¶ 16. Second, the court of appeals may, on its own motion, "enlarge . . . the time prescribed by these rules or court order for doing any act, or waive or permit an act to be done after the expiration of the prescribed time." Wis. Stat. § 809.82(2). In this case, the question of timeliness was fully briefed in Polashek's response to the State's motion to seek an interlocutory appeal, and a three-judge panel of the court of appeals, which decided the petition for leave to appeal, granted the appeal nonetheless. This was sufficient to show that the court of appeals exercised its discretionary power to waive the non-jurisdictional timeliness issue. Thus, we hold that the appeal should not be barred for untimeliness.

### III

¶ 17. We next examine the jury instruction on the third element of the crime—the "disclosure." The definition of "disclose" is a question of statutory interpretation, which we review de novo. *State ex rel. Hensley v. Endicott*, 2001 WI 105, ¶ 6, 245 Wis. 2d 607, 629 N.W.2d 686.

¶ 18. The ultimate goal of statutory interpretation is to determine and to give effect to the intent of the legislature. *Anderson v. City of Milwaukee,* 208 Wis. 2d 18, 25, 559 N.W.2d 563 (1997). To determine the intent of the legislature, we first look to the text of the statute. *Clark v. Am. Family Mut. Ins. Co.,* 218 Wis. 2d 169, 173, 577 N.W.2d 790 (1998). If the meaning of the statute is plain, we do not look beyond the statutory language to determine legislative intent. *State v. Sweat,* 208 Wis. 2d 409, 415, 561 N.W.2d 695 (1997).

¶ 19. In this case, the term "disclose" is not defined in the statute, and the term has not been interpreted in any decision of a Wisconsin court prior to this case. If a word is not defined in the statute, our next recourse has normally been to use a recognized dictionary to determine the common and ordinary meaning of the word. *State v. Perez,* 2001 WI 79, ¶ 23, 244 Wis. 2d 582, 628 N.W.2d 820.

¶ 20. Both parties acknowledge *Black's Law Dictionary* as an appropriate source. *Black's* defines "disclosure" as "The act or process of making known *something that was previously unknown;* a revelation of facts." *Black's Law Dictionary* 477 (7th ed. 1999) (emphasis added). A plain reading of this definition suggests that in order for a dissemination of information to be a "disclosure," the recipient must not have previous knowledge of the information disseminated.

¶ 21. Other dictionaries provide a similar definition. *Webster's Third New International Dictionary* defines "disclose" as "to expose to view: lay open or uncover (something hidden from view) . . . *to make known:* open up to general knowledge . . . *to reveal in words (something that is secret or generally not known)*: divulge."

*Webster's Third New International Dictionary (Unabridged)* 645 (1986) (emphasis added), and the *Oxford English Dictionary* defines "disclose" as "'To uncover (anything covered up from view); to remove a cover from and expose to view (anything material) ... *To open up to the knowledge of others;* to make openly known, reveal, declare (secrets, purposes, beliefs, etc.). . . ." 4 *Oxford English Dictionary* 737 (2d ed. 1989) (examples omitted) (emphasis added). Like *Black's,* these definitions also suggest that a disclosure requires that the recipient not have known the information prior to the disclosure. This leads us to the conclusion that a lack of knowledge on the part of the recipient is inherent in a disclosure.

¶ 22. As Polashek points out, several federal courts have interpreted "disclose" in a similar manner when interpreting the Federal Privacy Act, 5 U.S.C. § 552a (2000).[6] *See Pellerin v. Veterans Admin.,* 790 F.2d 1553, 1556 (11th Cir. 1986) (holding that a "dissemination of information to a person or persons who were previously aware of the information is not a disclosure under the Privacy Act"); *Sullivan v. United States Postal Serv.,* 944 F. Supp. 191, 196 (W.D.N.Y. 1996) (holding that "common sense requires that [disclosure] be taken to denote the imparting of information which in itself has meaning and which was previously unknown to the person to whom it was

---

[6] The Privacy Act provides, in relevant part, that "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." The statute contains some exceptions to this rule, and does not define the word "disclose." 5 U.S.C. § 552a (2000).

imparted"); *Brooks v. Veterans Admin.*, 773 F. Supp. 1483, 1485 n.1 (D. Kan. 1991) (stating that when the recipient had knowledge of certain protected information, any discussion of that matter with the recipient would not qualify as a disclosure under the Privacy Act). Although the court of appeals identifies *Pilon v. United States Dep't of Justice*, 73 F.3d 1111 (D.C. Cir. 1996), for the principle that any unauthorized dissemination is presumptively a "disclosure" under the Privacy Act, we note (as did the court of appeals) that even in *Pilon*, the U.S. Court of Appeals for the D.C. Circuit made an exception to that rule when the recipient had already received the information legally from the discloser. *See Pilon*, 73 F.3d at 1124 (holding that an agency's unauthorized release of a protected record constitutes a "disclosure," except under circumstances where the agency has previously, and lawfully disseminated the information to the recipient, who is fully able to reconstruct its contents).

¶ 23. We conclude, then, that to "disclose" information under § 48.981(7), the recipient must have been previously unaware of the information at the time of the communication. Because the disclosure of the confidential information is an element of the crime, the State has the burden to prove beyond a reasonable doubt that the disclosure took place. *In re Winship*, 397 U.S. 358, 363 (1970). We thus reverse the court of appeals on this issue.

IV

¶ 24. Finally, we address the issue of whether § 48.981(7)(f) is a strict liability statute. In the jury instructions accepted by the circuit court, the State

541

would have been required to show that the defendant intended to disclose the confidential information in order to convict him. The State challenged this instruction for the first time on appeal.

¶ 25. Polashek first argues that the appeal was waived because it was not raised in the circuit court. We disagree. The court of appeals correctly noted that, although the general rule is that issues not raised in the circuit court are deemed waived, the rule is not absolute and does not relate to the appellate court's jurisdiction. *See Apex Elec.*, 217 Wis. 2d at 384. Because the issue involved a question of law that had been fully briefed by both parties, and was of sufficient public interest to merit a decision, the court of appeals exercised its discretion to address the issue. *Id.; Polashek,* 2001 WI App 130, ¶ 28. We agree with the court of appeals' reasoning, and conclude that the court of appeals properly addressed the issue.

¶ 26. We find it appropriate to address the issue as well and we find, as did the court of appeals, that the legislature intended to create a strict liability offense in § 48.981(7)(f). We also agree substantially with the reasoning of the court of appeals on this issue.

¶ 27. An offense is a strict liability offense if it punishes a defendant's behavior without regard to the mental state of the defendant. *State v. Dundon,* 226 Wis. 2d 654, 664, 594 N.W.2d 780 (1999). To convict a defendant of a strict liability offense, the State is not required to prove that the defendant acted with a culpable state of mind while committing the offense. *State v. Stoehr,* 134 Wis. 2d 66, 75, 396 N.W.2d 177

(1986). Whether a statute imposes strict liability or not is ultimately an issue of statutory construction, which turns on legislative intent. *Id.* at 75. We review such a question de novo.

¶ 28. Both parties here agree that the plain language of § 48.981(7)(f), does not specify a mental state. Often, when the statute makes no reference to intent, we have held that the statute creates a strict liability offense. *See, e.g., State v. Black,* 2001 WI 31, ¶ 19, 242 Wis. 2d 126, 624 N.W.2d 363 (citing *Dundon,* 226 Wis. 2d at 664; *State v. Coleman,* 206 Wis. 2d 199, 207, 556 N.W.2d 701 (1996)). However, the mere fact that there is no mention of a mental state in the statute does not inevitably lead to that conclusion.

¶ 29. We have occasionally found a requisite mental state for an offense when the statute is silent regarding the mens rea requirement. *Stoehr,* 134 Wis. 2d at 77. When we have done so, we have looked at a number of factors to determine the legislative intent of the statute. These include the statute's plain language, the legislative history of the statute, the seriousness of the potential penalty imposed, the statute's purpose, and the practical requirements of effective law enforcement. *Id.* at 76 (citing *State v. Stanfield,* 105 Wis. 2d 533, 560–61, 314 N.W.2d 339 (1982); *State v. Collova,* 79 Wis. 2d 473, 478–80, 482, 485, 255 N.W.2d 581 (1977)). Taken together here, we, like the court of appeals, conclude that § 48.981(7)(f) creates a strict liability offense.

¶ 30. We first note that the plain language of § 48.981(7)(f) contains no explicit or implicit requirement of a mental state. The statute states that "Any person who violates this subsection, or who permits or encourages the unauthorized dissemination or use of

543

information contained in reports and records made under this section, may be fined not more than $1,000 or imprisoned not more than 6 months or both." However, in another section of the same statute, the legislature has chosen to include an element of intent. Section 48.981(6), the section immediately preceding the one at issue here, states "Whoever *intentionally* violates this section . . . ." (emphasis added). The inclusion of a mental state in one section of the statute tends to indicate to us a deliberate choice on the part of the legislature to exclude a mental state from subsection (7)(f).

¶ 31. The statute's purpose also supports this conclusion. In the past, we have noted that "[w]hen the legislature's goal is primarily to regulate, to accomplish a social good, or to obtain a high standard of care, proof of a criminal state of mind is often eliminated to achieve the desired result." *Stoehr,* 134 Wis. 2d at 79 (citing *Collova,* 79 Wis. 2d at 485). Here, the legislature, by establishing a confidentiality requirement, was clearly attempting to impose a high standard of care on those with access to records and reports of child abuse and neglect. In such a case, it is not unfathomable that the legislature would eliminate a mental state to enforce such a standard.

¶ 32. Consideration of the seriousness of the penalty is only somewhat helpful to our analysis. We consider the penalty for an offense because a particularly strict penalty would tend to indicate the legislative expectation of a more culpable mental state. *Id.* at 81. Here, the maximum penalty is a fine of no more than $1000 and a maximum of six months' imprisonment. Although the potential for imprisonment indicates a crime of some seriousness, we cannot find that is

544

sufficiently serious to necessitate a mental state, since we have found some statutes that carry significantly longer sentences to be legitimate strict liability statutes. *See, e.g., Coleman,* 206 Wis. 2d at 207 (felon in possession of a firearm, § 941.29(2), a Class D felony); *State v. Oimen,* 184 Wis. 2d 423, 445, 516 N.W.2d 399 (1994) (felony murder, § 940.03, punishable by 20 years in excess of the maximum penalty for the underlying felony).

¶ 33. Finally, we consider the practical needs for the effective enforcement of the statute. To prove that a defendant intended an action, the State is required to prove that the defendant "has a purpose to do the thing or cause the result specified, or is aware that his or her conduct is practically certain to cause that result." Wis. Stat. § 939.23(3). In addition, the State must show that the actor had "knowledge of those facts which are necessary to make his or her conduct criminal." *Id.* As the court of appeals concluded, in a case under § 48.981(7), this would require the police and prosecutors to examine the defendant's personal knowledge of the statutes, the defendant's knowledge of the actual information, and the defendant's knowledge of whether the information was confidential at the time he disclosed it. Given the regulatory purpose of the statute, and the high level of responsibility imposed upon the keepers of such information, the requirement of a mental state would hamper effective enforcement of the statute.

¶ 34. Taking into account all of these factors, we conclude that the legislature intended to create a strict liability offense in § 48.981(7). Thus, we affirm the court of appeals' decision that the appropriate jury instruction should not contain a requirement that the State prove intent.

## V

¶ 35. In sum, we hold, for the purposes of § 48.981(7), that "disclose" is defined to require that the information communicated must have been previously unknown by the recipient. With regard to the required mental state, we also hold that § 48.981(7)(f), creates a strict liability offense. We thus affirm the holding of the court of appeals in part, and reverse in part, and we remand the case to the circuit court for further proceedings in accordance with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed in part, and reversed in part.

¶ 36. N. PATRICK CROOKS, J. *(dissenting).* I cannot join Part III of the majority's opinion because I disagree with the majority's interpretation of the term "disclose." According to the majority, "to 'disclose' information under [Wis. Stat.] § 48.981(7), the recipient must have been previously unaware of the information at the time of the communication." Majority op. at ¶ 23. I respectfully dissent because I conclude that the term "disclose" in § 48.981(7) is ambiguous, and that, consistent with the goals and purposes of the statute, the definition of "disclose" does not require lack of knowledge on the part of the recipient.

¶ 37. Based on various dictionary definitions, the majority concludes that the term disclose is unambiguous and requires that the recipient must not have known the information prior to the communication. Majority op. at ¶ 21. The majority finds further support for that interpretation in several federal court decisions. *Id.* at ¶ 22. I agree that the court should turn to recognized dictionaries to determine the common and

ordinary meaning of "disclose." *State v. Perez,* 2001 WI 79, ¶ 23, 244 Wis. 2d 582, 628 N.W.2d 820. I disagree, however, that based on the dictionary definitions of "disclose" and the federal court decisions, the term "disclose" in Wis. Stat. § 48.981(7) is unambiguous.

¶ 38. The majority presents the following dictionary definitions of disclosure: (1) "The act or process of making known something that was previously unknown; a revelation of facts." *Black's Law Dictionary* 477 (7th ed. 1999); (2) "To expose to view: lay open or uncover (something hidden from view); to make known: open up something to general knowledge . . . to reveal in words (something that is secret or generally not known): divulge." *Webster's Third New International Dictionary (Unabridged)* 645 (1986); and (3) "To uncover (anything covered up from view); to remove a cover from and expose to view (anything material) . . . To open up to the knowledge of others; to make openly known, reveal, declare (secrets, purposes, beliefs, etc.) . . . ." 4 *Oxford English Dictionary* 737 (2d ed. 1989). Majority op. at ¶¶ 20–21. While these definitions may suggest a previous lack of knowledge on the part of the recipient, contrary to the majority, I do not interpret these definitions as unambiguously imposing such a requirement. Several parts of the definitions, including "to make known," "open up something to general knowledge," "generally not known," and "to make openly known," indicate that a disclosure does not necessarily require a previous lack of knowledge by the recipient. After examining the definitions of "disclosure," therefore, I conclude that the term is ambiguous on its face.

¶ 39. In addition to the dictionary definitions, the majority relies on some federal court decisions interpreting the term "disclose." Majority op. at ¶ 22. Some

federal courts have interpreted the term "disclose" under the Federal Privacy Act, 5 U.S.C. § 552a (2000), such that there is no violation of the Act where the agency makes available information already known by the recipient. *See Pellerin v. Veterans Admin.*, 790 F.2d 1553 (11th Cir. 1986); *Sullivan v. United States Postal Serv.*, 944 F. Supp. 191 (W.D.N.Y. 1996); *Brooks v. Veterans Admin.* 773 F. Supp. 1483 (D. Kan. 1991). In *Pilon v. United States Dep't of Justice,* 73 F.3d 1111, 1124 (D.C. Cir. 1996), however, the court concluded that any unauthorized release of confidential information constitutes a disclosure under the Privacy Act, except under narrow circumstances where the information disclosed was previously and lawfully disseminated by the agency to the recipient, who is fully able to reconstruct its contents. I disagree with the majority's interpretation of these cases as further support for the conclusion that "disclose" unambiguously requires a lack of prior knowledge by the recipient, in regard to the information communicated. The noted exception in *Pilon* is narrow and it does not encompass the context we are faced with here, regarding professionals who are entrusted with confidential information about suspected child abuse or neglect. Furthermore, the court in *Pilon* expressed the ambiguous nature of "disclose" when it presented the example of a government employee who must set forth his or her assets in a "financial disclosure statement" even though the statement discloses information identical to that which the recipient knows from the employee's prior years' statement. *Id.* at 1119. I agree with the court of appeals, therefore, that the federal cases are helpful only to the extent that they show reasonable minds can differ as to the meaning of "disclose."

¶ 40. Based on the varied dictionary definitions and the federal court decisions, I conclude, as did the court of appeals, that the term "disclose" is ambiguous. *See id.* When a statute is ambiguous, we then look to the scope, history, context, subject matter and purpose of the statute to determine the legislative intent. *Dodgeland Educ. Ass'n v. WERC,* 2002 WI 22, ¶ 21, 250 Wis. 2d 357, 639 N.W.2d 733. Here, the purpose of the statute leads me to conclude that a previous lack of knowledge requirement was not intended, and is therefore not required under Wis. Stat. § 48.981(7).

¶ 41. As the court of appeals acknowledged, the purpose of Wis. Stat. § 48.981 is to encourage the reporting of suspected child abuse and neglect, to assure that the appropriate services are provided to the families of abused and neglected children. *State v. Polashek,* 2001 WI App 130, ¶ 20, 246 Wis. 2d 627, 630 N.W.2d 545 (citing Laws of 1977, ch. 355, § 1). To encourage reporting, the legislature mandated that certain professionals, including physicians, nurses, social workers, teachers, and counselors, report suspected child abuse and neglect. Wis. Stat. § 48.981(2). The legislature also required that all mandatory reporters receive training on identifying and reporting suspected child abuse and neglect. § 48.981(8).

¶ 42. Furthermore, the legislature created several protections for mandatory reporters. Under Wis. Stat. § 48.981, reporters are immune from civil and criminal liability for the good faith reporting—which is presumed in all cases—of suspected abuse or neglect, and reporters cannot be fired from a job for reporting suspected abuse or neglect. §§ 48.981(2), (4), (7)(cr)5. Moreover, § 48.981(7) specifically provides that reports made pursuant to the statute are to be kept confidential, although with explicit exceptions. Especially sig-

nificant here, § 48.981(7) also protects against the "disclosure" of information that would identify the reporter. This ban on disclosing identifying information about the reporter furthers the statute's purpose of encouraging reporting, because it restricts the ability of parents or guardians of a child to retaliate against the reporter for making the mandatory report.

¶ 43. Based on the legislature's intent, I conclude that the dissemination of confidential information is a "disclosure" under Wis. Stat. § 48.981(7). The actual knowledge of the recipient is wholly unrelated to encouraging reporting of child abuse and neglect. The goal is to protect children, and in order to do so, to protect the identity of persons mandated to report suspected child abuse and neglect. Interpreting "disclose" to require that the recipient be unaware previously of the information does not further this purpose, because it allows for open discussion of confidential information if such information were previously known. Similarly, the Wisconsin Education Association Council (WEAC) notes in its amicus curiae brief that applying the majority's interpretation of "disclose" to § 48.981 produces inconsistent results. Section 48.981(7)(a) enumerates exceptions to the confidentiality requirement; thus, reports and records of suspected child abuse may be disclosed to certain identified persons. Contrary to the plain language of the statute, however, the majority's interpretation of "disclose" essentially adds to that list persons who have prior knowledge of the information communicated, and might be interpreted as allowing extensive discussion of a report with anyone who had some familiarity with the information in such a report.

¶ 44. Furthermore, under the majority's interpretation of "disclose," someone who discloses the identity

of the reporter would not be held responsible for violating the statute simply because the recipient was aware previously of the information. To me, this seems illogical and contrary to the legislature's intent. "[T]he recipient's previous knowledge of the information does not alter the fact that a disclosure was made." *Polashek,* 2001 WI App 130, ¶ 26. Consistent with the legislative purpose of § 48.981, therefore, I would affirm the court of appeals' conclusion that the definition of "disclose" does not require the State to prove a lack of knowledge on the part of the recipient. *See id.*

¶ 45. Finally, I note that the majority's interpretation of "disclose" seems inconsistent with the majority's conclusion that Wis. Stat. § 48.981(7) is a strict liability statute. The majority relies on several factors in drawing its conclusion on the strict liability issue. Two of those factors, however, seem inconsistent with the majority's prior conclusion that "disclose" requires that the recipient not have prior knowledge of the information.

¶ 46. First, the majority acknowledges the statute's purpose and states:

> by establishing a confidentiality requirement, [the legislature] was clearly attempting to *impose a high standard of care* on those with access to records and reports of child abuse and neglect. In such a case, it is not unfathomable that the legislature would eliminate a mental state to enforce such a standard.

Majority op. at ¶ 31 (emphasis added). Second, the majority notes that the practical needs for effective enforcement of the statute lead to the conclusion that the legislature intended a strict liability offense. The majority recognizes that interpreting the statute to require intent would hamper effective enforcement of

the statute, because police and prosecutors would have to "examine the defendant's personal knowledge of the statutes, the defendant's knowledge of the actual information, and the defendant's knowledge of whether the information was confidential at the time he disclosed it." Majority op. at ¶ 33.

¶ 47. These factors seem contrary to the majority's conclusion that "disclose" requires that the recipient not have prior knowledge of the information. Similar to imposing an intent requirement, imposing a prior knowledge requirement on the part of the recipient seems inconsistent with the legislature's intent to impose a "high standard of care on those with access to records and reports of child abuse and neglect." Majority op. at ¶ 31. The majority's interpretation of "disclose" is contrary to a high standard of care because, as I stated earlier, it allows open discussion of confidential information if the recipient has previous knowledge. Furthermore, the majority's interpretation of "disclose" hampers effective enforcement of the statute by requiring the State to prove that the recipient did not have prior knowledge of the information. Under the majority's interpretation of "disclose" the police and prosecutors are required to examine the recipient's personal knowledge of the information. Moreover, although I agree with the majority's conclusion that § 48.981(7) is a strict liability offense, I find several factors, leading to that conclusion, seemingly inconsistent with the majority's prior conclusion that "disclose" requires that the recipient lack knowledge of the information communicated.

¶ 48. For the reasons stated, I respectfully dissent from Part III of the majority's opinion.