# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1488 |
| COMPLETE TITLE: | State of Wisconsin Department of Justice,<br>       Petitioner-Respondent,<br>  v.<br>State of Wisconsin Department of Workforce<br>Development,<br>       Respondent,<br>Joell Schigur,<br>       Respondent-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 361 Wis. 2d 196, 861 N.W.2d 789)
(Ct. App. 2015 – Published)
PDC No. 2015 WI App 22

| | |
|---|---|
| OPINION FILED: | December 30, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 6, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Dane |
|   JUDGE: | Juan B. Colas |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | A.W. BRADLEY, ABRAHAMSON, J.J., dissent.<br>(Opinion Filed) |
|   NOT PARTICIPATING: | PROSSER, R.G. BRADLEY, J.J., did not<br>participate. |

ATTORNEYS:

    For the respondent-appellant-petitioner, there were briefs by *Peter J. Fox* and Fox & Fox, S.C., Monona, and oral argument by *Peter J. Fox*.

    For the petitioner-respondent, the caused was argued by *Winn S. Collins*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2013AP1488
(L.C. No. 2012CV2125)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin Department of Justice,

     Petitioner-Respondent,

  v.

State of Wisconsin Department of Workforce
Development,

     Respondent,

Joell Schigur,

     Respondent-Appellant-Petitioner.

**FILED**

**DEC 30, 2015**

Diane M. Fremgen
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, DOJ v. DWD, 2015 WI App 22, 361 Wis. 2d 196, 861 N.W.2d 789, which affirmed the decision of the Dane County circuit court,[1] which reversed the decision of the Equal Rights Division of the Department of Workforce Development ("DWD"). The Equal Rights Division of the

---

[1] The Honorable Juan B. Colas presided.

DWD concluded that Joell Schigur ("Schigur") had proven by a preponderance of the evidence that the Department of Justice ("DOJ") violated Wis. Stat. §§ 230.80-.89 (2011-12),[2] the subchapter of Wis. Stat. ch. 230 designated "Employee Protection," by taking retaliatory action against her because she lawfully disclosed, or the DOJ believed that she lawfully disclosed, information under § 230.81.

¶2 On April 15, 2008, Schigur attended a staff meeting for Bureau Directors of the DOJ's Division of Criminal Investigation ("DCI") at which her superior, Mike Myszewski ("Myszewski"), explained that the DCI would provide Wisconsin's then-Attorney General J. B. Van Hollen with 24-hour security at the 2008 Republican National Convention in Minnesota. A few days later, Schigur sent an e-mail to Myszewski and two other individuals employed by the DOJ in which she stated her concern that use of state resources at the event might violate state law and Office of State Employment Relations ("OSER") regulations. One month later, Schigur was removed from her position as DCI Public Integrity Director and returned to her previous position as Special Agent In-Charge.

¶3 This case involves a narrow question of statutory interpretation: we must determine whether Schigur's e-mail communications to Myszewski are entitled to protection under Wis. Stat. §§ 230.80-.89, given that "only certain disclosures

---

[2] All subsequent references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

made a particular way and regarding a subject matter covered in the statute will qualify for protection." Hutson v. Wis. Pers. Comm'n, 2003 WI 97, ¶37, 263 Wis. 2d 612, 665 N.W.2d 212. Simply stated, we examine whether Schigur's opinion alone, as to the lawfulness or appropriateness of government activity is "information" such that it is entitled to protection under §§ 230.80-.89, whether other portions of Schigur's e-mails relating to the proposed security detail constitute "disclosure[s]" of information under Wis. Stat. § 230.81, and whether Schigur's disclosure is protected because the DOJ believed that Schigur had "disclosed information" under the statute.

¶4    Schigur makes two specific arguments on review. First, she argues that disclosure of a "belief"——namely her opinion regarding the lawfulness or appropriateness of government activity——is disclosure of "information" under Wis. Stat. §§ 230.80-.89, and that the DOJ therefore may not discipline her for sending e-mail communications that disclosed such a belief.  Second, Schigur argues that the DOJ believed that Schigur engaged in activity protected under §§ 230.80-.89, and that Schigur is entitled to protection from discipline on that basis as well.  In response, the DOJ argues, among other things, that expressing a belief about known information is not "disclosing information" under the statute, and that Schigur forfeited her second argument by failing to raise it in the administrative proceeding below.

3

¶5 We conclude that: (1) an opinion alone, as to the lawfulness or appropriateness of government activity is not "information" as that term is defined in Wis. Stat. § 230.80(5); (2) under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained "information" regarding the proposed security detail, the communication of the information to Myszewski, Jed Sperry, and Cindy O'Donnell was not a "disclosure" under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails; and (3) Schigur's argument that the DOJ believed that she "disclosed information" rests on a misinterpretation of § 230.80(8)(c) and therefore fails. Accordingly, we affirm the decision of the court of appeals.

## I. FACTUAL BACKGROUND

¶6 On May 28, 2006, DCI Administrator Jim Warren ("Warren") promoted Schigur from her position as Special Agent In-Charge within DCI to the position of Director of DCI's Bureau of Public Integrity. Schigur was subject to a two-year probationary period and received probationary performance evaluations every three months. From September 2006 to November 2007, Joell received six positive probationary performance evaluations from Warren.

¶7 On January 3, 2008, Myszewski became DCI's Acting Administrator and Schigur's supervisor. On February 22, 2008, Myszewski completed Schigur's seventh probationary performance evaluation. The evaluation was again positive, and recommended

4

that Schigur "be removed from probation and receive permanent status as a director."

¶8 On April 15, 2008, Schigur attended a staff meeting for DCI Bureau Directors. At the meeting, Myszewski informed the attendees that then-Wisconsin Attorney General J. B. Van Hollen would be attending the Republican National Convention in Minnesota. Myszewski explained that DCI would provide the Attorney General with 24-hour security at the event, and that the head of DCI's tactical unit, Jed Sperry ("Sperry"), would plan the security detail.

¶9 On April 21, 2008, Schigur sent an e-mail to Myszewski, Sperry, and Cindy O'Donnell ("O'Donnell"), the Administrator of the DOJ's Division of Management Services ("DMS"), which stated in part:

> In our April 15th staff meeting, a discussion was held regarding providing the Attorney General with a 24 hour security detail of special agents while he attends the Republican National [Convention] in Minnesota. SAC Jed Sperry was selected as the individual responsible for coordinating this effort. The Office of State Employee Relations in the bulletin numbered OSER-0053-MRS (attached) clarified permissible political activities for state employees. According to Section 6(h), a state employee may participate as a delegate, alternate, or proxy to a political convention provided he or she is off duty and not on state property.
>
> I am concerned that providing state resources to the Attorney General while he participates in a political activity off duty may violate OSER regulations and state law. I am expressing this concern in hopes that this decision will be further evaluated to avoid possible scrutiny of our Attorney General, our agency and our special agents.

Schigur attached to the e-mail OSER bulletin OSER-0053-MRS.

¶10 On April 23, 2008, Myszewski e-mailed Schigur. He wrote in part:

> I have read both your [e-mail] and the attached OSER bulletin with great interest. Thank you for calling my attention to your concerns about the potential of improper political activity by our agent(s) who will provide security for the Attorney General at the [Republican National Convention] in September. I will forward your concerns up the chain of command so that they can be evaluated.
>
> However, I do not think that an on duty DCI agent who is protecting the Attorney General at a political event, at which certain groups have threatened to violently disrupt, constitutes political activity on the part of an agent.

¶11 The same day, Schigur responded with another e-mail message, which read in part:

> To clarify, the concern is not regarding agents participating in political activity; rather can state resources be used by the [Attorney General] at a political event where he is not representing DOJ, rather the Republican Party. Parallel issues [came up] in the Jensen/Chvala investigation.
>
> Thanks for looking into this further.

¶12 On May 21, 2008, Myszewski and O'Donnell met with Schigur and presented her with her final probationary performance evaluation. The evaluation stated that, during the time since her previous evaluation, Schigur had "been persistently unwilling to carry out administration policies, argumentative, disrespectful, suspicious of management, and

insubordinate" as well as "openly critical and defiant of management's policies and decision making."[3]

¶13 Effective May 22, 2008, the DOJ removed Schigur from her position as DCI Public Integrity Director and returned her to her previous position as Special Agent In-Charge.

## II.  PROCEDURAL BACKGROUND

¶14 On July 11, 2008, Schigur filed a complaint with the Equal Rights Division of the DWD.  The complaint alleged that the DOJ had unlawfully retaliated against her by terminating her probation and demoting her to her previous position for e-mailing Myszewski about Schigur's concerns regarding the proposed security detail at the Republican National Convention. On September 26, 2008, the Equal Rights Division of the DWD issued an "Initial Determination" that there was probable cause to believe that the DOJ violated Wis. Stat. §§ 230.80-.89 by "[t]aking any retaliatory action because the employee lawfully disclosed, or the respondent believed the employee had disclosed, information under sec. 230.81, Stats."  The case was certified for an administrative hearing on the merits of Schigur's complaint.

---

[3] In the evaluation, Myszewski provides purported examples of this behavior.  However, the issues involving the quality of Schigur's performance at the DOJ are not before this court.  As will be explained, the Administrative Law Judge below concluded that Schigur's (putative) disclosure of information to Myszewski in her April 2008 e-mails was "a factor" in the DOJ's decision to terminate Schigur's probation and reinstate Schigur as Special Agent In-Charge.

¶15 From September 28 to September 30, 2009, a hearing on the DOJ's liability was held before Administrative Law Judge Deborah Little Cohn ("ALJ"). The ALJ stated on the first day of the hearing that:

> Ms. Schigur filed a complaint with the Wisconsin Equal Rights Division . . . alleging that the [DOJ] violated the Wisconsin Whistle Blower Law, Section 230.80-230.89 of the Wisconsin Statutes, by taking retaliatory action because she lawfully disclosed——or the [DOJ] believed that she had disclosed information under Section 230.81 Wis. Stats.

On April 29, 2011, the Equal Rights Division of the DWD issued a "Non-Final Decision and Memorandum Opinion" finding that Schigur had proven by a preponderance of the evidence that the DOJ had violated Wis. Stat. §§ 230.80-.89 by taking retaliatory action against her "because she lawfully disclosed, or the [DOJ] believed that she had lawfully disclosed, information" under § 230.81.

¶16 On July 7, 2011, the DOJ filed a motion for reconsideration of the ALJ's non-final decision. In its motion, the DOJ argued for the first time that, among other things, Schigur had not "disclose[d]" "information" under Wis. Stat. §§ 230.81(1)(a) and 230.80(5)(a), respectively. In response, Schigur submitted that the DOJ had no right to ask for reconsideration of a written decision of an Equal Rights Division ALJ. On September 19, 2011, the ALJ denied the DOJ's motion. The ALJ stated that she believed she possessed authority to reconsider her non-final decision, but that the issues raised by the DOJ were "best addressed on appeal."

8

¶17 On October 4, 2011, a remedy hearing was held before the ALJ. On April 4, 2012, the Equal Rights Division of the DWD issued a second "Non-Final Decision and Memorandum Opinion" ordering the DOJ to take certain actions to remedy its violation of Wis. Stat. §§ 230.80-.89.

¶18 On April 30, 2012, the Equal Rights Division of the DWD issued a "Final Decision and Memorandum Opinion." The decision again found that Schigur had proven by a preponderance of the evidence that the DOJ had violated Wis. Stat. §§ 230.80-.89 by taking retaliatory action against her "because she lawfully disclosed, or the [DOJ] believed that she had lawfully disclosed, information" under § 230.81. The decision concluded that "Schigur disclosed 'information' as defined under Wis. Stat. sec. 230.80(5) in her April 21 and 23, 2008 [e-mails] to her supervisor," and that Schigur had proven by a preponderance of the evidence that the "DOJ decided that she failed to pass probation as a Bureau Director and reinstated her to her former position as a Special Agent In-Charge because she disclosed information under Wis. Stat. sec. 230.81." The decision again ordered the DOJ to take certain actions to remedy its violation.

¶19 On May 29, 2012, the DOJ filed a petition for judicial review of the April 30, 2012 decision in Dane County circuit court. On May 21, 2013, the circuit court issued a decision and order reversing the decision of the Equal Rights Division of the DWD. The court found that Schigur had not disclosed "information" as that term is defined in Wis. Stat. § 230.80(5), and that Schigur's communications were therefore not entitled to

9

protection under §§ 230.80-.89. On July 2, 2013, Schigur filed a notice of appeal.

¶20 On February 5, 2015, the court of appeals affirmed the circuit court's decision. DOJ v. DWD, 2015 WI App 22, ¶31, 361 Wis. 2d 196, 861 N.W.2d 789. The court of appeals concluded that "Schigur's statements in the [e-mails] did not disclose 'information,' but rather expressed her opinion that providing security to the Attorney General might be a violation of law." Id., ¶30. On March 4, 2015, Schigur filed a petition for review in this court. On June 12, 2015, we granted the petition.

### III. STANDARD OF REVIEW

¶21 "In an administrative appeal, the scope of our review is identical to that of the circuit court and is set forth in Wis. Stat. § 227.57." Andersen v. DNR, 2011 WI 19, ¶24, 332 Wis. 2d 41, 796 N.W.2d 1 (citation omitted). In this case we interpret Wis. Stat. §§ 230.80-.89. "The interpretation of a statute and its application to undisputed facts is a question of law that we review de novo." Id., ¶26 (citation omitted). In appropriate cases we accord a level of deference to an agency's interpretation and application of a statute. See, e.g., id., ¶¶26-29. However, the ALJ below did not examine any of the statutory questions we answer today. Therefore, there is no decision to which we might defer.

¶22 "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or

10

specially-defined words or phrases are given their technical or special definitional meaning." State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted). Additionally, we interpret statutory language "reasonably, to avoid absurd or unreasonable results." Id., ¶46.

## IV. ANALYSIS

¶23 Wisconsin Stat. ch. 230 governs "State Employment Relations", that is, state government employment relations. See, e.g., Wis. Stat. § 230.01 (Statement of policy). Subchapter III of ch. 230, see Wis. Stat. §§ 230.80-.89, is titled "Employee Protection." We have referred to this statute as "the whistleblower law" because "it includes provisions intended to encourage employees to disclose certain types of information and protect employees from retaliation that might result from such disclosures." Hutson, 263 Wis. 2d 612, ¶1 & n.1. Under Wis. Stat. § 230.83, "[n]o appointing authority, agent of an appointing authority or supervisor may initiate or administer, or threaten to initiate or administer, any retaliatory action against an employee." Wis. Stat. § 230.83(1).

¶24 Wisconsin Stat. § 230.80(8) defines "[r]etaliatory action" as:

[A] disciplinary action taken because of any of the following:

(a) The employee lawfully disclosed information under s. 230.81 or filed a complaint under s. 230.85(1).

11

(b) The employee testified or assisted or will testify or assist in any action or proceeding relating to the lawful disclosure of information under s. 230.81 by another employee.

(c) The appointing authority, agent of an appointing authority or supervisor believes the employee engaged in any activity described in par. (a) or (b).

Wis. Stat. § 230.80(8) (emphases added).

¶25 Wisconsin Stat. § 230.81(1) states in part: "An employee with knowledge of information the disclosure of which is not expressly prohibited by state or federal law, rule or regulation may disclose that information to any other person." Wis. Stat. § 230.81(1) (emphases added). However, "to obtain protection under s. 230.83, before disclosing that information to any person" the employee must first "[d]isclose the information in writing" either to the employee's supervisor or to a "governmental unit" selected by the Equal Rights Division of the DWD. Wis. Stat. § 230.81(1)(a)-(b).[4]

¶26 "Information" is defined in the statute as:

[I]nformation gained by the employee which the employee reasonably believes demonstrates:

(a) A violation of any state or federal law, rule or regulation.

(b) Mismanagement or abuse of authority in state or local government, a substantial waste of public funds or a danger to public health and safety.

---

[4] This requirement is subject to certain exceptions not applicable here. See Wis. Stat. § 230.81(1).

Wis. Stat. § 230.80(5). The words "disclose" and "disclosure" are not defined in the statute.

¶27 The DOJ argues that Schigur is not entitled to protection under Wis. Stat. §§ 230.80-.89 for three reasons: (1) Schigur did not "disclose information" under § 230.81; (2) Schigur did not comply with the statutory requirement to disclose the information in writing to her supervisor, Myszewski, before disclosing it to other individuals, namely O'Donnell and Sperry, see § 230.81(1)(a); and (3) Schigur's opinion that the information she disclosed demonstrated a violation of law was not "reasonabl[e]." See § 230.80(5)(a).

¶28 Schigur disputes each of these contentions. In addition, she argues that even if she did not "disclose information" under Wis. Stat. § 230.81, her communication is still entitled to protection because the DOJ believed that she disclosed information under § 230.81. See Wis. Stat. § 230.80(8)(c).

¶29 We conclude that an opinion alone, as to the lawfulness or appropriateness of government activity is not "information" as that term is defined in Wis. Stat. § 230.80(5). We further conclude that under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained "information" regarding the proposed security detail, the communication of the information to Myszewski, Sperry, and O'Donnell was not a "disclosure" under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails. These conclusions render it unnecessary to examine

13

the DOJ's other arguments. See, e.g., State v. Subdiaz-Osorio, 2014 WI 87, ¶143, 357 Wis. 2d 41, 849 N.W.2d 748 (Ziegler, J., concurring) ("[W]e are generally obliged to decide our cases on the 'narrowest possible grounds.'" (citations omitted)). Finally, we conclude that Schigur's argument that the DOJ believed that she "disclosed information" rests on a misinterpretation of Wis. Stat. § 230.80(8)(c) and therefore fails.

A. Liberal Construction of Wis. Stat. §§ 230.80-.89

¶30 Before we begin our textual analysis of Wis. Stat. §§ 230.80-.89, we must address Schigur's contention that we are to construe the statute liberally. Wisconsin Stat. § 230.02, "Liberal construction of statutes," states that "[s]tatutes applicable to the office shall be construed liberally in aid of the purposes declared in s. 230.01." Wis. Stat. § 230.02.[5] Schigur draws our attention to the following purposes set forth in Wis. Stat. § 230.01:

> It is the policy of the state to ensure its employees
> opportunities for satisfying careers and fair

---

[5] The "office" is the office of state employment relations. Wis. Stat. § 230.03(10w). Schigur does not discuss how we are to know when a statute is "applicable to the office" of state employment relations. Wis. Stat. § 230.02. However, Wis. Stat. § 230.04(1) states that "[t]he director is charged with the effective administration of" Wis. Stat. ch. 230. § 230.04(1). The "director" is the director of the office of state employment relations. Wis. Stat. § 230.03(9e), (10w). We therefore will assume without deciding that Wis. Stat. §§ 230.80-.89 are "[s]tatutes applicable to the office" of state employment relations.

14

treatment based on the value of each employee's services. It is the policy of this state to encourage disclosure of information under subch. III ["Employee Protection"] and to ensure that any employee employed by a governmental unit is protected from retaliatory action for disclosing information under subch. III.

Wis. Stat. § 230.01(2).[6] We take such a directive from the legislature seriously. However, none of the purposes cited by Schigur affect today's statutory inquiry.

¶31 We will examine the purposes Schigur lists in reverse order. First, "[i]t is the policy of this state to encourage <u>disclosure of information</u> under subch. III and to ensure that any employee employed by a governmental unit is protected from <u>retaliatory action</u> for <u>disclosing information</u> under subch. III." Wis. Stat. § 230.01(2) (emphases added). This policy contains the very language we must interpret in this case. We cannot construe the statute liberally in aid of disclosure of information and protection from retaliatory action for disclosure of information until we know what the terms "disclosure of information" and "retaliatory action" mean. In other words, we must first give these specific terms their "common, ordinary, and accepted meaning[s]" or their "special definitional meaning[s]" if definitions are provided. <u>Kalal</u>,

---

[6] Wisconsin Stat. § 230.01 contains other state policies, such as "correct[ing] pay inequities based on gender or race in the state civil service system" and "tak[ing] affirmative action which is not in conflict with other provisions of" Wis. Stat. ch. 230. Wis. Stat. § 230.01(2). Schigur does not claim that any of the other purposes affect our analysis and we do not address them.

271 Wis. 2d 633, ¶45. Only when the content of these words is identified can the rest of the statute be interpreted liberally in aid of disclosure of information and protection from retaliatory action.

¶32 The only issue we examine today to which this policy might apply without necessitating circular reasoning is the question of whether the DOJ believed Schigur lawfully disclosed information under Wis. Stat. § 230.81. That issue requires us to interpret Wis. Stat. § 230.80(8)(c). However, "a provision can be construed 'liberally' as opposed to 'strictly' only when there is some ambiguity to construe," Salazar v. Ramah Navajo Chapter, 567 U.S. ___, 132 S. Ct. 2181, 2199 (2012) (Roberts, J., dissenting), and as we will demonstrate, § 230.80(8)(c) is not ambiguous.

¶33 Second, "[i]t is the policy of the state to ensure its employees opportunities for satisfying careers and fair treatment based on the value of each employee's services." Wis. Stat. § 230.01(2). We are at a loss as to how this policy, amorphous in this context, is supposed to alter our statutory interpretation in this case. Schigur has not provided us with any additional guidance. "[W]e do not usually address undeveloped arguments." State v. Gracia, 2013 WI 15, ¶28 n.13, 345 Wis. 2d 488, 826 N.W.2d 87 (citation omitted).

¶34 In sum, there may be cases where the "liberal construction" provision affects our analysis of a statute, but this is not one of them. We proceed to address Schigur's arguments.

16

## B. Whether Schigur Lawfully Disclosed "Information" Under Wis. Stat. § 230.81

¶35 Under Wis. Stat. § 230.83(1), "retaliatory action[s]" are prohibited. One type of retaliatory action occurs when "a disciplinary action [is] taken because . . . [an] employee lawfully disclosed information under s. 230.81." Wis. Stat. § 230.80(8)(a).

¶36 Under Wis. Stat. § 230.81(1), "[a]n employee with knowledge of <u>information</u> the disclosure of which is not expressly prohibited by state or federal law, rule or regulation may disclose that <u>information</u> to any other person." Wis. Stat. § 230.81(1) (emphases added). As stated, "information" is defined in the statute as

> [I]nformation gained by the employee which the employee reasonably believes demonstrates: (a) A violation of any state or federal law, rule or regulation. (b) Mismanagement or abuse of authority in state or local government, a substantial waste of public funds or a danger to public health and safety.

Wis. Stat. § 230.80(5).

¶37 The DOJ argues that Schigur did not "disclose information" under Wis. Stat. § 230.81.[7] Schigur's argument in

---

[7] Schigur argued before the circuit court and the court of appeals below that the DOJ had forfeited this argument because the DOJ did not raise the argument until it filed its motion for reconsideration of the ALJ's non-final decision regarding the DOJ's liability. It is unclear whether Schigur renews this argument before this court. We have stated in an analogous context that "[w]hen an issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision, this court may exercise its discretion to address" an issue not raised until appeal. <u>Apex</u>

(continued)

response is that an opinion alone, as to the lawfulness or appropriateness of certain government activity is "information" under Wis. Stat. § 230.80(5). According to this reasoning, when Schigur notified Myszewski, Sperry, and O'Donnell of her concerns about the lawfulness or appropriateness of the security detail that Myszewski had proposed, she was protected from retaliatory action for that communication.

¶38 We agree with the conclusion of the court of appeals that Wis. Stat. § 230.81(1) "does not cover employee statements that merely voice opinions or offer criticism." DOJ v. DWD, 361 Wis. 2d 196, ¶27 (citation and internal quotation marks omitted). We think the language of the statute clearly mandates this interpretation.

¶39 The statute's definition of "information" itself contains the word "information." The statute thus extends protection only to the disclosure of a certain type of information: (1) information gained by the employee; (2) that the employee reasonably believes demonstrates one of the enumerated inappropriate activities. Schigur's opinion regarding the security detail's lawfulness or appropriateness fulfills the second of these factors, but not the first.

---

Elec. Corp. v. Gee, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998) (party failed to raise issue in circuit court). All three prerequisites are met in this case with regard to the DOJ's argument that Schigur did not "disclose information." Therefore, assuming without deciding that the DOJ forfeited this argument, we will address the DOJ's argument.

18

¶40 Schigur's argument does not comport with the statute's definition of information.  If an opinion as to the lawfulness or appropriateness of government activity itself constituted "information gained by [an] employee," then under the statute the employee would have to reasonably believe that the opinion itself demonstrated inappropriate government conduct.  But one person's ultimate conclusion that certain conduct is unlawful or inappropriate does not, alone, demonstrate unlawful or inappropriate government conduct.  For example, the statement "I believe that it is illegal for the government to censor free speech" does not in and of itself demonstrate that the government has censored free speech; there are no facts alleged in the conclusion that demonstrate that the government has engaged in conduct that constitutes censorship. This is why "information" in this context instead refers to the details of underlying conduct rather than to an opinion alone, as to the lawfulness or appropriateness of that conduct.  An employee's opinion——her "reasonabl[e] belie[f]," Wis. Stat. § 230.80(5)—— regarding that conduct's unlawfulness or inappropriateness is necessary for the statute's protection to cover disclosure of that conduct, but the conduct itself is the "information" that is disclosed, not the opinion that the conduct is unlawful or inappropriate.  Cf. Kinzel v. Bd. of Regents of Univ. of Wis. Sys., No. 2012AP1586, unpublished slip op., ¶19 (Wis. Ct. App. Mar. 28, 2013) (examining Wis. Stat. § 230.90, which provides protection from retaliation on the basis of an employee's exercise of her free speech rights, and explaining that that

19

statute "does not cover employee statements that merely voice opinions or offer criticism" (citation omitted)).[8]

¶41 We conclude that an opinion alone, as to the lawfulness or appropriateness of government activity is not "information" as that term is defined in Wis. Stat. § 230.80(5).[9]

C.  Whether Other Portions of Schigur's E-mails Relating to the Proposed Security Detail are "Disclosure[s]" of Information under Wis. Stat. § 230.81

¶42 While Schigur's e-mail contained details regarding the proposed security detail at the Republican National Convention, she does not contend that these facts constitute "information."

---

[8] Schigur attempts to draw a distinction between her opinion and the opinion given by the plaintiff in Kinzel v. Board of Regents of the University of Wisconsin System, No. 2012AP1586, unpublished slip op. (Wis. Ct. App. Mar. 28, 2013). Schigur claims the opinion in Kinzel was merely a "statement of personal disapproval," not a belief that a law would be violated or that state resources would be misused.  That may be so, but as it pertains to the issue before us, it is a distinction without a difference.

[9] Schigur claims that Kmetz v. State Historical Society, 304 F. Supp. 2d 1108 (W.D. Wis. 2004), rev'd in part on reconsideration sub nom. Kmetz v. Vogt, No. 03-C-107-C, 2004 WL 298102 (W.D. Wis. Feb. 11, 2004), "compels a ruling" in her favor on this issue.  We do not agree with this contention.  The court in Kmetz did not conclude that an opinion alone as to the lawfulness or appropriateness of certain government activity constituted "information" under the statute it was analyzing, Wis. Stat. § 895.65 (renumbered Wis. Stat. § 230.90; see 2005 Wis. Act 155, § 60).  The court in that case was instead concerned with the meaning of the word "disclosure."  See Kmetz, 304 F. Supp. 2d at 1141.  The Kmetz court held that "[§ 895.65] does not protect employees that voice their opinions and offer criticism."  Id. at 1115.  Schigur again attempts to distinguish her opinion from the opinions given by the plaintiff in Kmetz, but the distinctions do not affect our conclusion.

20

Schigur's attorney clarified multiple times at oral argument Schigur's view that it was Schigur's opinion alone, as to the lawfulness or appropriateness of government activity that constituted "information" under Wis. Stat. § 230.80(5). For instance, the following exchange occurred between Justice Ziegler and Schigur's attorney:

> Justice Ziegler: Can I try to clarify something? . . . The "information" isn't the travel with security detail. You're saying the "information" is her legal opinion that doing so is unlawful.
>
> Schigur's attorney: Exactly.
>
> Justice Ziegler: There's a difference. I think people were considering the "information" to be the travel with security, versus, you're saying the "information" is her legal opinion about that conduct being unlawful.
>
> Schigur's attorney: Yeah. Or the "information" is her belief that the use of state resources in this way was unlawful, constituted a violation of OSER.

¶43 And in response to a line of questioning posed by Justice Gableman at oral argument, Schigur's attorney declared, "[W]hat [Schigur] disclosed was not the existence of the security detail. What she disclosed was its unlawfulness." Schigur argues to the same effect in her brief: "For the Court of Appeals (and the Circuit Court before it) to declare that an expression of belief is not protected . . . is wrong."

¶44 Even assuming, without deciding, that other portions of Schigur's e-mail constitute "information" under Wis. Stat. § 230.80(5), we nonetheless conclude that Schigur's communication of this information is not protected under

21

§§ 230.80-.89 because the communication was not a "disclosure" under Wis. Stat. § 230.81.

¶45 After attending the staff meeting led by Myszewski, Schigur e-mailed Myszewski, Sperry, and O'Donnell. But as Schigur made clear before the circuit court, "the decision to utilize State agents to provide a security detail to the Attorney General was known to those whom Schigur [e-mailed]." Myszewski in particular is the person who had informed Schigur of the proposed security detail in the first place.

¶46 Wisconsin Stat. §§ 230.80-.89 protects "employee disclosure[s]" of information. Wis. Stat. § 230.81; see § 230.80(8); § 230.83. We have held, in another context, that to "disclose" information, "the recipient must have been previously unaware of the information at the time of the communication." State v. Polashek, 2002 WI 74, ¶23, 253 Wis. 2d 527, 646 N.W.2d 330. We arrived at our definition of the word "disclose" in Polashek after examining several dictionary definitions of "disclose," as well as the interpretations of that word by multiple federal courts. See id., ¶20-22. We stated in that case that "a lack of knowledge on the part of the recipient is inherent in a disclosure." Id., ¶21.

¶47 "What is of paramount importance is that [the legislature] be able to legislate against a background of clear interpretive rules, so that it may know the effect of the language it adopts." Finley v. United States, 490 U.S. 545, 556 (1989), superseded by statute as stated in Exxon Mobil Corp. v.

22

Allapattah Serv., Inc., 125 U.S. 546, 557-58 (2005). Therefore we would require a convincing reason indeed to interpret "disclose" any differently in this context.

¶48 Perhaps Schigur does not seriously pursue an argument that other portions of her e-mail constitute disclosed "information" under the statute because the argument would require this court to adopt a definition of the word "disclose" that would lead to truly absurd results. As discussed, to disclose "information" under Wis. Stat. § 230.81, an employee must disclose "information gained by the employee which the employee reasonably believes demonstrates" enumerated types of unlawful or inappropriate government activity. Wis. Stat. § 230.80(5). The definition of "information" makes clear that the employee need only disclose the details of the underlying conduct. The employee need <u>not</u> disclose her reasonable belief that the information demonstrates unlawful or inappropriate government activity; instead, the employee need only <u>hold</u> that belief. If this court were to conclude that a "disclosure" under § 230.81 does not require a lack of knowledge on the part of the recipient, then an employee who merely repeated a supervisor's statement back to the supervisor, while inwardly believing that the conduct the statement described was unlawful or inappropriate, would thereby become entitled to protection under Wis. Stat. § 230.83 (assuming that the employee otherwise complied with statutory procedures). This pushes the concept of "whistleblowing" a tad too far.

23

¶49 We conclude that, under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained "information" regarding the proposed security detail, the communication of the information to Myszewski, Sperry, and O'Donnell was not a "disclosure" under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails. Consequently, those portions of the e-mail are not protected under Wis. Stat. § 230.83.

### D. Whether the DOJ Believed Schigur Lawfully Disclosed Information Under Wis. Stat. § 230.81

¶50 Another type of retaliatory action prohibited under Wis. Stat. § 230.83 occurs when "a disciplinary action [is] taken because . . . [t]he appointing authority, agent of an appointing authority or supervisor <u>believes</u> the employee engaged in any activity described in par. (a) or (b)." Wis. Stat. § 230.80(8)(c) (emphasis added). The activities referenced in Wis. Stat. § 230.80(8)(a) and (b) are: "(a) The employee lawfully disclosed information under s. 230.81 or filed a complaint under s. 230.85(1)"; and "(b) The employee testified or assisted or will testify or assist in any action or proceeding relating to the lawful disclosure of information under s. 230.81 by another employee."

¶51 Schigur argues that the DOJ engaged in retaliatory action against her because it <u>believed</u> she disclosed information under Wis. Stat. § 230.81. The DOJ argues in response that Schigur forfeited the claim "by failing to timely assert it

24

before the administrative agency," and that we cannot review the claim because it presents a question of fact.

¶52 Schigur did not argue before the ALJ that the DOJ engaged in retaliatory action under Wis. Stat. § 230.80(8)(c). However, the ALJ stated on the first day of the hearing on the DOJ's liability that:

> Ms. Schigur filed a complaint with the Wisconsin Equal Rights Division . . . alleging that the [DOJ] violated the Wisconsin Whistle Blower Law, Section 230.80-230.89 of the Wisconsin Statutes, by taking retaliatory action because she lawfully disclosed——or the [DOJ] believed that she had disclosed information under Section 230.81 Wis. Stats.

The ALJ's final decision similarly stated that Schigur had proven by a preponderance of the evidence that the DOJ had violated Wis. Stat. §§ 230.80-.89 by taking retaliatory action against her "because she lawfully disclosed, or the [DOJ] believed that she had lawfully disclosed, information" under Wis. Stat. § 230.81.

¶53 Schigur contends that her argument that the DOJ believed she disclosed information was a response to certain of the DOJ's arguments that it raised for the first time in its motion for reconsideration before the ALJ. The ALJ did not reconsider her decision, concluding that the DOJ's new arguments were "best addressed on appeal." Schigur says she raised her Wis. Stat. § 230.80(8)(c) claim at the first possible opportunity: before the circuit court. She reasserted the argument again at the court of appeals, and the issue was one of

25

two that she presented in her petition for review before this court.

¶54  The procedural circumstances of this case are somewhat unique.  As stated, supra note 7, "[w]hen an issue involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision, this court may exercise its discretion to address" an issue not raised until appeal.  Apex Elec. Corp. v. Gee, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998).  Both parties have briefed the issue.[10]  As will be shown, the issue Schigur raises is legal rather than factual under the circumstances of this case.  Finally, we granted review of the issue and find it of sufficient public interest to merit a decision.  Therefore, assuming Schigur forfeited the issue, a question we do not decide today, we exercise our discretion to review the issue.

¶55  In arguing that the DOJ believed Schigur disclosed information, Schigur states, "clearly the DOJ believed that Schigur's disclosures were protected under the statute."  In other words, Schigur reads Wis. Stat. § 230.80(8)(c) as defining retaliatory actions to include instances where a supervisor

---

[10] The DOJ chose not to address the merits of the argument in its brief, but we ordered briefing on the issues raised in the petition for review.  To rule that the parties had not "briefed the issue" simply because the DOJ declined to brief it when given the opportunity would be to give the DOJ control of whether or not this court reviews a forfeited issue.

26

makes a mistake of law as to whether an employee's communication is a "disclosure of information."  According to this argument, even if Schigur did not "disclose information" as defined in the statute, she is still protected if the DOJ <u>believed</u> she "disclosed information" as defined in the statute.  Schigur misinterprets § 230.80(8)(c).  The most reasonable interpretation of the provision is that it is aimed at situations where a supervisor retaliates on the basis of a mistake of <u>fact</u>, such as when a supervisor is told that an employee engaged in conduct that could constitute disclosure of information, but the employee had not in fact engaged in that <u>conduct</u>.  Put differently, § 230.80(8)(c) would be applicable, for example, if a supervisor <u>believed</u> that an employee had sent e-mail disclosures and retaliated against the employee on that basis, but the employee had not in fact sent any such e-mails at all.

¶56 Schigur essentially asks us to hold that although she is not protected by Wis. Stat. §§ 230.80-.89, the DOJ <u>believed</u> she was protected by §§ 230.80-.89, and she is therefore protected.  The argument is illogical:  an employer would not retaliate against an employee "because" the employer mistakenly believed that the employee would receive protection against retaliation.  Wis. Stat. § 230.80(8).  Instead, an employer might retaliate against an employee because the employer mistakenly believed that the employee had engaged in conduct that the employee had not in fact engaged in.

27

¶57 Because there is no dispute in this case that Schigur e-mailed Myszewski, Sperry, and O'Donnell[11] after attending the staff meeting led by Myszewski, and because there is no dispute about the content of the e-mails, Wis. Stat. § 230.80(8)(c) is not applicable here.

¶58 We conclude that Schigur's argument that the DOJ believed that she "disclosed information" rests on a misinterpretation of Wis. Stat. § 230.80(8)(c) and therefore fails.

### V.  CONCLUSION

¶59 We conclude that: (1) an opinion alone, as to the lawfulness or appropriateness of government activity is not "information" as that term is defined in Wis. Stat. § 230.80(5); (2) under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained "information" regarding the proposed security detail, the communication of the information to Myszewski, Jed Sperry, and Cindy O'Donnell was not a "disclosure" under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails; and (3) Schigur's argument that the DOJ believed that she "disclosed information" rests on a misinterpretation of § 230.80(8)(c) and therefore fails. Accordingly, we affirm the decision of the court of appeals.

---

[11] We do not decide whether Schigur complied with the procedural requirements of Wis. Stat. § 230.81(1) when she e-mailed Myszewski, Sperry, and O'Donnell simultaneously.

*By the Court.*—The decision of the court of appeals is affirmed.

¶60  DAVID T. PROSSER, J., and REBECCA G. BRADLEY, J., did not participate.

¶61 ANN WALSH BRADLEY, J. *(dissenting).*

¶62 The Wisconsin Legislature recognized the important role of whistleblowers in maintaining accountable government. The legislative purpose of the statute is expressly declared: "It is the policy of this state to encourage disclosure of information... and to ensure that any employee employed by a governmental unit is protected from retaliatory action for disclosing information..." Wis. Stat. § 230.01(2).

¶63 Employees are encouraged to disclose information, including a violation of any law or regulation and any mismanagement or substantial waste of public funds. Wis. Stat. § 230.80(5). In aid of this, the legislature has directed that the statues "shall be construed liberally in aid of the purposed declared..." Wis. Stat. § 230.02.

¶64 I write separately because the majority opinion undermines the legislative purpose of Wisconsin's whistleblower statute. First, the majority creates a heretofore unknown rule that bars the application of the explicit legislative directive of liberal construction. Second, it writes new language into the statute thereby limiting the protections available to whistleblowers. Third, it turns the legislative policy on its head, creating an absurd result.

¶65 Contrary to the majority, I conclude that Joell Schigur lawfully disclosed information pursuant to Wis. Stat. § 230.81. I would reverse the court of appeals and uphold the

1

determination of the Department of Workforce Development, Equal Rights Division. Accordingly, I respectfully dissent.

I

¶66 The Department of Justice ("DOJ") selected Joell Schigur to be its Director of the Bureau of Public Integrity. She was demoted after she sent emails to her supervisor, Michael Myszewski, expressing her concern regarding Attorney General Van Hollen's use of a taxpayer paid security detail at the upcoming Republican National Convention.

¶67 Schigur wrote that she "was concerned that providing state resources to the Attorney General while he participates in a political activity off duty may violate OSER regulations and state law." Attached to Schigur's email was a bulletin from the Office of State Employee Relations ("OSER") regarding prohibited political activities. Schigur explained that she was sending the email "in hopes that this decision will be further evaluated to avoid possible scrutiny of our Attorney General, our agency and our special agents."

¶68 Schigur explained in a second email that "the concern is not regarding agents participating in political activity; rather can state resources be used by the AG at a political event where he is not representing DOJ, rather the Republican Party. Parallel issues came up in the Jensen/Chvala investigation." Ultimately, no security detail was sent to the Republican National Convention.

¶69 Prior to sending the above emails to Myszewski, Schigur received quarterly job performance evaluations that were

2

uniformly positive. Shortly before Schigur sent the emails, Myszewski completed her 21-month probationary performance evaluation. He wrote: "Joell continues to do an outstanding job of leading the Public Integrity Bureau and the Internet Crimes Against Children Program. Joell is a nationally recognized leader in the area of protecting children from Internet predators. Joell has successfully mastered all of the objectives and standards for a bureau director. I recommend that Joell be removed from probation and receive permanent status as a director."

¶70 Yet, shortly after Schigur sent the emails to Myszewski, she received her 24-month probationary performance evaluation that was negative and markedly different from her prior uniformly positive evaluations. As a result, Schigur was removed from her Bureau Director position and demoted.

¶71 In its findings of fact, the Department of Workforce Development, Equal Rights Division, found that "Schigur's disclosure in her April 21 and 23, 2008 emails to Myszewski and O'Donnel was a factor in DOJ's decision that she failed to pass probation as a Bureau Director on May 21, 2008."[1] The Department determined that the DOJ violated Wis. Stat. § 230.80-89 by "raking retaliatory action against [Schigur] because she lawfully disclosed, or the Respondent believed that she had lawfully disclosed, information under sec. 230.81."

---

[1] Cindy O'Donnell, Administrator of the DOJ's Division of Management Services, as well as Jed Sperry, the head of the DOJ's Division of Criminal Investigation's tactical unit, also received copies of the emails.

¶72 The majority reverses the Department's determination. It concludes that "under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained 'information' regarding the proposed security detail, the communication of the information to Myszewski, Jed Sperry, and Cindy O'Donnell was not a 'disclosure' under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails..." Majority op., ¶5. In reaching its conclusion, the majority declines to follow the directive that the statute be liberally construed to effect its purpose and instead writes into the statute a "new" requirement.

II

¶73 "It is, of course, a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature..." State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Kalal instructs that we must give judicial deference to the policy choices enacted by the legislature." See Id., ¶44.

¶74 The majority turns a blind eye not only to the above instructions but also to recognized rules of statutory interpretation. Instead of embracing precedent, the majority sub silencio overrules it, while creating its own contrary, and heretofore unknown, rule of statutory interpretation.

¶75 The express mandate of Kalal, which the majority sub silencio overrules, provides: "a plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose." Id., ¶49. Kalal explained that purpose is "perfectly

4

relevant to a plain-meaning interpretation of an unambiguous statute" as long as it is ascertainable from the text of the statute itself and not extrinsic sources. Id., ¶48.

¶76 But the majority will have none of this. It dutifully sets forth the purpose that is ascertainable from the text as declared by the legislature in Wis. Stat. § 230.01(2): "It is the policy of this state to encourage disclosure of information... and to ensure that any employee employed by a governmental unit is protected from retaliatory action for disclosing information..." Id., ¶30. The majority likewise acknowledges that the legislature expressed in the text of Wis. Stat. § 230.02 that it should be liberally construed: "Statutes applicable to the office shall be construed liberally in aid of the purposes declared in § 230.01." Majority op., ¶30 (citing Wis. Stat. § 230.02).

¶77 Nevertheless, the majority contends that it cannot apply the legislature's explicit directive to liberally construe the statute. Why?

¶78 The majority claims that a provision can be construed liberally only when there is some ambiguity to construe.[2] It also asserts that "[w]e cannot construe the statute liberally in

_____

[2] The majority applies this new rule of statutory interpretation to Wis. Stat. § 230.80(8)(c), which prohibits retaliation when a "supervisor believes the employee engaged in any activity described in par. (a) or (b)." The activities referenced in Wis. Stat. § 230.80(8)(a) include whether "[t]he employee lawfully disclosed information under s. 230.81…" Accordingly, the majority's statutory interpretation of Wis. Stat. § 230.80(8)(c) cannot be separated from its interpretation of Wis. Stat. § 230.81.

5

aid of disclosure of information and protection from retaliatory action for disclosure of information until we know what the terms 'disclosure of information' and 'retaliatory action' mean." Id., ¶31.

¶79 A liberal construction "is often used to signify an interpretation which produces broader coverage or more inclusive application of statutory concepts. What is called a liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be the case under a strict construction." In re R.W.S., 162 Wis. 2d 862, 871-72, 471 N.W.2d 16 (1991) (citing Singer, Sutherland Statutory Construction, sec. 58.02 (4th ed. 1984)).

¶80 The majority's reasoning that it cannot construe the statute liberally until it first defines the terms in the statute is backwards. "Liberal construction of any statute consists in giving the words a meaning which renders it effectual to accomplish the purpose or fulfill the intent which it plainly discloses." State ex rel Mueller v. Sch. Dist. Bd., 208 Wis. 257, 260, 242 N.W. 574 (1932).

¶81 Instead of applying the statutorily required liberal construction, the majority defines the terms "disclose" and "information" narrowly so that Schigur's claims do not fall within the statute. It then reasons that we need not construe the statute liberally because Schigur's claims do not fall within the statute.

¶82 The point of liberal construction is to interpret the statue in a way that furthers the legislative goal, which in

6

this case is to protect employees who act as whistleblowers. Yet, the majority has done the opposite here by defining the terms of the statute in a way that denies protection for whistleblowers.

¶83 The majority's contention that a statute cannot be construed liberally unless it is ambiguous is a heretofore unknown rule of statutory interpretation.3 It sub silencio overrules the widely accepted rule of statutory interpretation set forth in Kalal——that a plain-meaning interpretation cannot contravene a textually manifest statutory purpose. 271 Wis. 2d 633, ¶49.

¶84 Kalal's well-recognized rule has been relied upon for years by judges, attorneys and litigants.4 In fact, as recently

---

3 The majority cites to Justice Roberts's dissent in Salazar v. Ramah Navajo Chapter, where he stated without citation that "a provision can be construed 'liberally' as opposed to 'strictly' only when there is some ambiguity to construe." 132 S. Ct. 2181, 2199 (2012). Salazar is not controlling because it concerns the interpretation of a government contract provision. 132 S. Ct. at 2199. While both the Indian Self-Determination and Education Assistance Act ("ISDA") and government contracts under the act are to be liberally construed, Justice Robert's dissent concerns the interpretation of a government contract, not the statutory language of the ISDA. Id. As in Wisconsin, it is well established in U.S. Supreme Court jurisprudence that a remedial statute is entitled to liberal construction in order to effectuate legislative intent. See, e.g., Clifford F. MacEvoy Co. v. U.S. ex rel. Clavin Tompinks Co., 322 U.S. 102 (1944) ("The [act] is highly remedial in nature. It is entitled to a liberal construction and application in order to properly effectuate the Congressional intent…").

4 See, e.g., Linveille v. City of Janesville, 184 Wis. 2d 705, 715-18, 516 N.W.2d 427 (1994) (In Wisconsin, a statute may be liberally construed even if it is not ambiguous).

7

as a few months ago, we again embraced that established rule of statutory interpretation in State v. Williams, 2014 WI 64, ¶36, 355 Wis. 2d 581, 852 N.W.2d 467 ("In addition to the statutory history and structure, the contextually manifest purposes of [the statute] are relevant to our plain meaning analysis."). See also State v. Dinkins, 2012 WI 24, ¶101, 339 Wis. 2d 78, 810 N.W.2d 787 ("scope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute, so long as they are ascertainable from the statute itself. Importantly, a plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose.") (Ziegler, J. dissenting) (quotations and citations omitted); Brunton v. Nuvell Credit Corp., 2010 WI 50, ¶17, 325 Wis. 2d 135, 785 N.W.2d 302 ("A plain-meaning interpretation cannot contravene a textually or contextually manifest statutory purpose.") (citation omitted).

¶85 Unfortunately, the majority's newly minted rule of statutory interpretation will have far-reaching consequences that go well beyond this whistleblower statute. For example, Wisconsin's Fair Employment law contains a legislative directive that it be liberally construed to advance the purposes of the statute. Wis. Stat. § 111.31(3). Likewise, Wisconsin's Consumer Transactions law contains the same directive. Wis. Stat. § 421.102(1). Will the legal rights of Wisconsin's workers and consumers be similarly limited under the majority's new rule of statutory interpretation?

8

¶86 The numerous Wisconsin laws that contain similar legislative directives range across the broadest spectrum of our statutes. See, e.g., Wis. Stat. § 766.001(1) (Marital Property); Wis. Stat. § 16.001(2) (Department of Administration); Wis. Stat. § 32.71 (Eminent Domain); Wis. Stat. § 707.57(4) (Time-Share Ownership); Wis. Stat. § 231.24 (Health and Educational Facilities Authority); Wis. Stat. § 401.305(1) (Uniform Commercial Code); Wis. Stat. § 66.0301 (2) (Intergovernmental Cooperation); Wis. Stat. § 645.01(3) (Insurers Rehabilitation and Liquidation).

¶87 The juggernaut of the majority's analysis rests on its new rule of statutory interpretation: a provision can be construed liberally only when there is some ambiguity to construe. Majority op., ¶32. As discussed above, the majority's new rule: (a) bars the application of the statutory directive of liberal construction to effectuate the legislative purpose; (b) sub silencio overrules part of Kalal, a seminal statutory interpretation case; and (c) has broad negative consequences. Simply put, the majority's new rule of statutory interpretation should not stand.

III

¶88 The majority's insistence that a "disclosure" must contain "new" information writes language into the statute which dramatically limits whistleblower protections. According to the majority, in order to "disclose" information, "the recipient must have been previously unaware of the information at the time of the communication." Id., ¶46 (citing State v. Polashek, 2002

9

WI 74, ¶23, 253 Wis. 2d 527, 646 N.W.2d 330). It maintains that Schigur's emails were "not a 'disclosure' under Wis. Stat. § 230.81 because the information was already known to the recipients of the e-mails." <u>Id.</u>, ¶49. Accordingly, the majority concludes that Schigur has no recourse under the law for any retaliation that resulted from her emails regarding the Attorney General's security detail at the Republican National Convention.

¶89 The plain language of Wis. Stat. §§ 230.80-89 contains no requirement that the disclosed information be previously unknown. It neither contains the words "new" or "secret" nor any other word or phrase that could be interpreted as a synonym. Wis. Stat. § 230.81(1)(a) states:

> An employee with knowledge of information the disclosure of which is not expressly prohibited by state or federal law, rule or regulation may disclose that information to any other person. However, to obtain protection under s. 230.83, before disclosing that information to any person… the employee shall... disclose the information in writing to the employee's supervisor.

Wis. Stat. § 230.80(5)(a) and (b) define "information" as:

> 'Information' means information gained by the employee which the employee reasonably believes demonstrates:
>
> > (a) A violation of any state or federal law, rule or regulation.
> >
> > (b) Mismanagement or abuse of authority in state or local government, a substantial waste of public funds or a danger to public health and safety.

¶90 "It is presumed that the legislature is cognizant of what language to include or omit when it enacts laws." <u>In re</u>

10

Incorporation of Portion of Town of Sheboygan, 2001 WI App 279, ¶9, 248 Wis. 2d 904, 637 N.W.2d 770.  Reading an unwritten requirement for new or secret information into the whistleblower statutes dramatically narrows the scope of protected disclosures in contravention of legislative intent.  As this court has previously explained, "[o]ur duty to fulfill legislative intent ensures that we uphold the separation of powers by not substituting judicial policy views for the views of the legislature."  State ex rel. Hensley v. Endicott, 2001 WI 105, ¶7, 245 Wis. 2d 607, 629 N.W.2d 686 (quoting State ex rel. Cramer v. Schwartz, 2000 WI 86, ¶17, 236 Wis. 2d 473, 613 N.W.2d 591).

¶91 The majority relies on State v. Polashek for its conclusion that "disclosure" means "new information."  Polashek is a slender reed upon which to rest such a conclusion.  Although the Polashek court determined that "the term 'disclose' in § 48.981(7) requires that the recipient not have knowledge of the information communicated," its determination is not controlling.  253 Wis. 2d 527, ¶3.  It is construing a penal statute, Wis. Stat. § 48.981(7)(f), which provides a criminal penalty for the unauthorized disclosure of confidential information relating to reports of suspected child abuse or neglect.  See id., ¶1.

¶92 Penal statutes are strictly construed.  See, e.g., State v. Christensen, 110 Wis. 2d 538, 547, 329 N.W.2d 382 (1983).  "This cannon of strict construction is grounded on two public policies.  The first favors notice as to what conduct is

11

criminal. The second recognizes that 'since the power to declare what conduct is subject to penal sanctions is legislative, rather than judicial, it would risk judicial usurpation of the legislative function for a court to enforce a penalty where the legislature had not clearly and unequivocally prescribed it.'" Id., 110 Wis. 2d 538, 546-457 (citations omitted).

¶93 Given that Wis. Stat. § 48.981(7) is a penal statute, the cannon of strict construction required the Polachek court to interpret "disclosure" narrowly so that the definition of criminal conduct under the statute was not expanded by the judiciary. In Polachek, the disclosure of information was an element of the crime. 253 Wis. 2d 527, ¶23. By narrowly defining "disclosure of information" to recipients who were unaware of the information, the Polachek court properly limited, rather than expanded, criminal conduct under the statute.

¶94 The purpose and effect of Wis. Stat. §§ 230.80-89 is the opposite of Wis. Stat. § 48.981(7) because the whistleblower act is a remedial statute. In contrast to penal statutes, "[u]nder the accepted law of Wisconsin and of other jurisdictions, remedial statutes should be liberally construed to 'suppress the mischief and advance the remedy which (the statute) intended to afford.'" City of Madison v. Hyland, Hall & Co., 73 Wis. 2d 364, 373, 243 N.W.2d 422 (1976). In this case, the cannons of statutory interpretation demand that "disclosure" and "information" be liberally construed so that

12

protections for whistleblowers are advanced and retaliation by employers is suppressed.

¶95  Wis. Stat. § 230.80(5)(a) and (b) define "information" as:

> 'Information' means information gained by the employee which the employee reasonably believes demonstrates:
>
> (a) A violation of any state or federal law, rule or regulation.
>
> (b) Mismanagement or abuse of authority in state or local government, a substantial waste of public funds or a danger to public health and safety.

¶96 The majority reaches two conclusions regarding why Schigur's emails are not information under the statute.  First, "an opinion alone, as to the lawfulness or appropriateness of government activity is not 'information' as that term is defined in Wis. Stat. § 230.80(5)."  Majority op., ¶5, 29, 41 & 59.  Second, "that under the specific facts of this case, and assuming without deciding that Schigur's e-mail contained 'information' regarding the proposed security detail, the communication... was not a 'disclosure'... because the information was already known to the recipients of the e-mails."  Id., ¶29.  I address each in turn.

¶97 I address first the majority's conclusion "that an opinion alone, as to the lawfulness or appropriateness of government activity is not 'information' as that term is defined in Wis. Stat. § 230.80(5).  Id., ¶29.  Relying on Kinzel v. Bd. of Regents of the Univ. of Wisconsin Sys., an unpublished court of appeals decision, the majority asserts that Wis. Stat. §

13

230.90 "does not cover employee statements that merely voice opinions or offer criticism." Id., ¶40 (citing Kinzel, No. 2012AP1586, unpublished slip op., ¶19 (Wis. Ct. App. Mar. 28, 2013).

¶98 In Kinzel, the plaintiff claimed to have disclosed information about an abuse of authority, which is protected pursuant to Wis. Stat. § 230.80(5)(2). Kinzel, No. 2012AP1586, ¶20. The court of appeals determined that Kinzel did not disclose information about an abuse of authority, but "merely gives his opinion and criticizes." Id. Kinzel did "not set forth specific facts regarding the events associated with the suspension." Id., ¶21. Kinzel did "not present any information supporting his opinion that these people are blameless." Id., ¶22.

¶99 In furtherance of its discussion, the majority offers a sample of the type of opinion that was addressed in Kinzel and deemed inadequate to constitute "information." The majority offers: "For example, the statement 'I believe that it is illegal for the government to censor free speech.'" Majority op., ¶40. If that were the genre of opinion that was offered by Schigur, I would agree with the majority that without more, it is not information. But here there was more, much more.

¶100 Schigur did not merely voice a generic opinion saying "I believe that it is illegal for the DOJ to violate the law and expend taxpayer money for private political purposes." As the Director of the Bureau for Public Integrity, she included specifics facts underlying the concerns that she advanced:

14

- The Attorney General was going to use a state paid security detail while he attended the Republican National Convention.

- She raised a concern about the use of state resources given the facts that he would be "off duty," not representing the DOJ, but rather representing a political party.

- She provided a copy of the state regulation that she thought may be violated.

- She cited to "parallel issues (that) came up in the Jensen/Chvala investigation."

¶101 The facts demonstrate a "reasonable belief" for her concern that there may be a violation of a law or regulation and a "reasonable belief" that that there may be "mismanagement" of or "a substantial waste of public funds." This is the very definition of information under the statute and it is exactly what the statue required.

¶102 Even if the rewriting of the statue by the majority inserting the word "new" into it were to be condoned, the facts here would meet that test. Until Schigur sent her supervisor emails expressing her concern, he was unaware that she reasonably believed that the DOJ might be violating the law or committing an abuse of funds. Yet, the majority cannot allow Schigur's concern to be interpreted as new information because it would satisfy even the most restrictive definition of "disclose."

15

¶103 The majority advances next that even assuming that the emails provided information, it was not a "disclosure... because the information was already known to the recipients of the e-mails." Majority op., ¶29.

¶104 The majority goes so far as to argue that "[t]he employee need not disclose her reasonable belief that the information demonstrates unlawful or inappropriate government activity; instead, the employee need only hold that belief." Id., ¶48 (emphasis in the original). This assertion finds no support in the plain language of the statute.

¶105 What about an attorney who is called upon to provide a purely legal opinion about whether facts revealed by another employee constitute illegality or misuse of state funds? The attorney would be compelled to disclose her legal opinion, but would not be protected under the whistleblower act because the opinion would not be "information." The firing of an attorney because she does not give the legal opinion that her supervisor wants should violate the statute. However, under the majority's analysis, the attorney could be fired without recourse for providing an ethical, but unpopular, legal opinion.

¶106 The majority has taken a statutory notice requirement from Wisconsin's whistleblower law and turned it into a double-edged sword. Under the majority's decision, a government employee who tries to prevent wrongdoing risks losing whistleblower protection even if she complies with the law. If an employee does not provide her supervisor with notice of an alleged wrongdoing, she has no protection under the law.

16

However, according to the majority, if the supervisor already knows about the wrongdoing, the whistleblower still has no protection under the law even though she provided the required notice.

IV

¶107 Statutory language should be interpreted "reasonably, to avoid absurd or unreasonable results." Kalal, 271 Wis. 2d 633, ¶46. The majority's statutory interpretation of "disclosure" and "information" leads to an absurd and unreasonable result. In some instances the majority's interpretation would protect the wrongdoer, rather than the whistleblower. For example, what if an employee reported evidence of theft to her supervisor without knowing that he was actually the thief? The corrupt supervisor could fire the employee and she would have no protection as a whistleblower because the information was already known. This result turns the legislative purpose of the act on its head by discouraging, rather than encouraging, reporting.

¶108 Pursuant to Wis. Stat. § 230.81(1)(a), an employee with knowledge of information shall disclose the information in writing to her supervisor before disclosing it to any other person. The majority has taken a simple notice requirement and turned it into a trap for the unwary. "Employees should not be discouraged from the normal route of pursuing internal remedies before going public with their good faith allegations. Passaic Valley Sewerage Comm'rs v. U.S. Dep't of Labor, 992 F.2d 474, 478 (3rd Cir. 1993).

17

¶109 "Indeed, it is most appropriate, both in terms of efficiency and economics... that employees notify management of their observations..." Id. "Employers benefit from a system in which the employee reports suspected violations to the employer first; the employee should not, in any event, be penalized for bestowing that benefit on the employer." Sullivan v. Massachusetts Mut. Life Ins. Co., 802 F.Supp. 716, 725 (D. Conn. 1992). Under the majority's decision, an employee is penalized for reporting a violation if the supervisor already knew about the violation.

¶110 The consequences of this decision may be far-reaching. Not only will whistleblowers suffer retaliation without recourse, but all of Wisconsin's citizens lose protection against government corruption. Absent legal protections, it will be the rare employee who will risk her livelihood to act as a whistleblower. "Without employees who are willing to risk adverse employment consequences as a result of whistleblowing activities, the public would remain unaware of large-scale and potentially dangerous abuses." Dolan v. Cont'l Airlines, 563 N.W.2d 23, 26 (Mich. 1997).

V

¶111 In its findings of fact, the Department concluded that "Schigur's disclosure in her April 21 and 23, 2008 emails to Myszewski and O'Donnel was a factor in DOJ's decision that she failed to pass probation as a Bureau Director on May 21, 2008." We will uphold an agency's findings of fact if they are supported by credible and substantial evidence. See, e.g.,

18

<u>Brown v. State Dep't of Children and Families</u>, 2012 WI App 61, ¶11, 341 Wis. 2d 449, 819 N.W.2d 827.  No one has argued here that this finding of fact is not supported by credible and substantial evidence.  We must therefore resolve this case with the understanding that this fact is exactly as the Department found.

¶112 In sum, for the reasons stated above, I conclude that Schigur lawfully disclosed information pursuant to Wis. Stat. § 230.81.  Therefore, I would reverse the court of appeals and uphold the decision of the Department of Workforce Development, Equal Rights Division, which  concluded that the DOJ violated Wis. Stat. §§  230.80-89 when it terminated Joell Schigur's probation.  Accordingly, I respectfully dissent.

¶113 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this opinion.